Larry Daniel HAMBLEN *v.* STATE of Arkansas

CA CR 92-1216                                       866 S.W.2d 119

Court of Appeals of Arkansas
Division II
Opinion delivered November 24, 1993

*Henry & Mooney*, by: *John R. Henry*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. On June 10, 1992, appellant Larry D. Hamblen, Jr. was convicted by a jury of battery in the first degree and permitting abuse of a child. Appellant was sentenced to twenty (20) years and fined $15,000.00 on the battery charge and sentenced to ten (10) years and fined $10,000.00 for permitting child abuse, with the sentences to run concurrently. Appellant contends on appeal that the trial court erred in admitting into evidence certain testimony which had been given at an earlier hearing in juvenile court. We find no error and affirm.

The testimony presented in this case revealed that on October 27, 1991, appellant, Larry D. Hamblen, took his five-week-old son, Kendall A. Hamblen, to the emergency room at Methodist Hospital in Jonesboro. Dr. L. K. Austin, a practicing pediatrician in Jonesboro, testified that he attended the five-week-old child on the afternoon of October 27, 1991. Dr. Austin stated that Kendall had multiple bruising on his arms, the palms of his hands were bruised, and that the child was in severe pain when moving his lower extremities. X-rays of Kendall's lower extremities revealed multiple fractures below his knees. Both bones above the ankle of Kendall's left leg and one bone of his right leg were fractured. Dr. Austin testified that a CT scan also revealed swelling of the brain which the doctor opined was due to a shaking syndrome; where you pick up a child and shake him, whiplashing the neck and causing the brain to bounce back and forth against the skull. Dr. Austin stated that it takes tremendous force to break bones in a five-week-old infant because the bones are so flexible, some bones not being completely formed and still

being partly cartilage. The doctor further stated that, on the basis of his twenty-seven years of experience practicing medicine, in his opinion the injuries sustained by Kendall were the result of child abuse. He stated that appellant's explanation that the child fell out of a crib was not consistent with his physical findings.

Dr. John Woloszyn, a practicing orthopedic surgeon in Jonesboro, testified that he also attended to the injuries of Kendall on October 27, 1991. In addition to the injuries listed above, Dr. Woloszyn found what he believed to be a typical cigarette burn, or the healed remnants thereof, on the left outside of the child's arm. He opined that the injuries to Kendall were less than one week old and that the trauma to the legs involved quick, sharply applied force. Dr. Woloszyn also stated that it was his opinion that these injuries were caused by child abuse, and that the appellant's explanation to him that Kendall must have banged his leg on something could not have caused these results.

Bill Brown, an employee attending Kendall in the emergency room on the day in question, testified that Kendall was apprehensive and very jumpy anytime someone would speak to him. He stated that appellant was initially very cooperative, but then before anyone mentioned child abuse the appellant stated, "[d]on't accuse me of beating my child. I didn't do it." Mr. Brown and Tammy Summers, an LPN on staff at the hospital, both verified the bruising on Kendall's arm, legs and back.

On October 28, 1991, an emergency custody order was entered by the juvenile division of the Craighead County Chancery Court finding that an emergency existed and placing the child in the temporary custody of the Division of Children and Family Services. On October 30, 1991, a probable cause hearing was held at which the two parents were present, appellant and Donna Reams, the mother of the child but who was not married to the appellant. The appellant and Miss Reams were both advised of their right to have an attorney present and their right not to testify if they so wished. The following exchange took place as the hearing began:

> THE COURT: Do you understand that you have a right to be represented by any attorney in these proceedings?

> . . .

THE COURT: This is not in the nature of a criminal proceeding, and at this point and time under the law I'm not authorized to appoint an attorney to represent you. Do you understand that? [Appellant's request for indigent status had previously been denied.]

MR. HAMBLEN: Yes sir.

THE COURT: Miss Reams has indicated to the court that she wants to go ahead and proceed without an attorney with the probable cause hearing today. Do you want to do that also?

MR. HAMBLEN: Yes.

THE COURT: The other thing I would caution you of, Mister Hamblen, and also you likewise Miss Reams, is the court has been advised that the two of you have apparently had some criminal charges filed against you, or will have some criminal charges filed against you as a result of this alleged incident. Is that correct?

THE COURT: I want to caution you that number one, you have the right to refuse to testify in this matter if you choose not to testify, and also advise you that if you do choose to testify and you're placed under oath in these proceedings that even though these proceedings are not in the nature of criminal proceedings but involve the custody of this child, that anything that you say in this court can and will be used against you in the criminal proceedings. Do both of you understand that?

MR. HAMBLEN: Yes sir.

THE COURT: Do you understand that also?

MS. REAMS: Yes sir.

Both appellant and Miss Reams went on to testify in the juvenile court hearing on October 30, 1991. Miss Reams testified that she had observed the appellant shake the child on several occasions, but that she did not believe "anything happened when this occurred." When appellant testified he denied ever having "shaken" the child and yet testified, "I never shook him hard."

On June 8, 1992, the appellant was before the circuit court on the criminal charges. The case against Miss Reams was severed from the appellant's. Miss Reams' attorney notified the court and the State that she would exercise her Fifth Amendment right and refuse to testify at appellant's trial. The State gave notice that it intended to use Miss Reams' sworn testimony from the juvenile court proceeding as evidence against appellant in his criminal trial. The appellant objected, contending that he was not represented by counsel at the earlier hearing and that a probable cause hearing was not the type of "prior hearing" contemplated by the Arkansas Rules of Evidence. The trial judge ruled in favor of the State and Miss Reams' testimony was introduced.

Appellant contends on appeal that it was error to admit the testimony of Miss Reams against him. The following is a portion of the testimony given by Miss Reams at the chancery court juvenile division hearing which indicates that appellant did shake the child:

## DONNA REAMS

[H]aving been first duly sworn to speak the truth, the whole truth and nothing but the truth, then testified as follows:

### DIRECT EXAMINATION

BY MR. McCAULEY:

Q You are Donna Reams?

A Yes sir.

Q And you heard the Judge explain to you that you do not have to testify at this hearing?

A Right.

Q Do you wish to testify?

A Yes.

Q You do?

A Uh-huh.

Q You heard the statement of Mr. Moxley about the statement that you gave to the — Officer Beals?

A Uh-huh.

Q Is that accurate?

A Right.

Q And did you observe Mr. Hamblen shake the child on several occasions?

A Uh-huh.

Q How may times?

A About two times, maybe three.

Q Did you think anything happened when this occurred?

A No.

Q Do you think that the shaking was of the nature that could've caused the broken legs of the child?

A No, I don't.

Q Do you have any explanation as to the cause of the broken legs?

A The only thing I can think of is the swing or changin' a diaper. That's the only thing we've come up with.

Q No other explanation?

A No.

Arkansas Rules of Evidence 804 provides in part:

> *Rule 804. Hearsay exceptions — Declarant unavailable. —*
> (a) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant:
> (1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement;

. . .

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

■■ The question of admissibility of an unavailable witness's testimony was addressed in *Scott and Johnson* v. *State*, 272 Ark. 88, 612 S.W.2d 110 (1981), where the Arkansas Supreme Court stated:

There has traditionally been an exception to the right of confrontation where a witness who testified at a prior trial is unavailable at a later judicial proceeding. State evidentiary rules can fall within this exception if two tests are met. First, the witness must be "unavailable". . . . Next, the evidence must be reliable. . . . [A]dmission depends upon the circumstances surrounding the hearing. In the case of a preliminary hearing admission depends upon what kind of hearing is involved and whether it is a "full fledged" hearing or a limited one.

(Citations omitted.) 272 Ark. at 92-93, 612 S.W.2d at 112-113. In *Scott* the supreme court cited *California* v. *Green*, 399 U.S. 149 (1970), which held that testimony from a preliminary hearing was admissible because the circumstances of the hearing were not "significantly different" but closely approximated those that surrounded a typical trial. The reasons given were: the witness was under oath; the defendant was represented by counsel and had the opportunity to cross-examine the witness; and, the trial was before a tribunal equipped to provide a judicial record.

As the record from the probable cause hearing cited above reveals, appellant was informed of his right to be represented by an attorney but stated that he wanted to proceed without counsel. He and Miss Reams were both specifically told that crimi-

nal charges were to be filed against them for the same matters before the chancery court, and that they had the right to refuse to testify. They were further informed that "if you do choose to testify and you're placed under oath in these proceedings that even though these proceedings are not in the nature of criminal proceedings but involve the custody of this child, that *anything that you say in this court can and will be used against you in the criminal proceedings*." (Emphasis added). Both appellant and Miss Reams acknowledged that they understood the significance of testifying. Appellant was clearly given the opportunity to cross-examine Miss Reams on her testimony that he shook the child, however he declined to do so. His "motive to develop the testimony" in the chancery case was very similar to his motive in the criminal case; i.e., to avoid any implications of child abuse, so that the child could remain with him and he would not be convicted of child abuse.

■ Miss Reams was an unavailable witness because she invoked her Fifth Amendment right not to testify. The requirements of Ark. R. Evid. 804(b)(1) were met to allow the introduction of Miss Reams' earlier testimony. The evidence was clearly reliable because Miss Reams' motive was also to keep the child in their home. The circumstances and protection of rights afforded the appellant at the probable cause hearing were not "significantly different" from an actual trial. *See California v. Green, supra.* We find no abuse of discretion by the trial court in admitting the testimony.

Affirmed.

JENNINGS, C.J., and MAYFIELD, J., agree.