Judy Ann BEARDEN *v.* ARKANSAS DEPARTMENT of
HUMAN SERVICES

01-31                                              42 S.W.3d 397

Supreme Court of Arkansas
Opinion delivered March 29, 2001

318

*Robert L. Herzfeld, Jr.*, for appellant.

*Kathy L. Hall*, for appellee.

ANNABELLE CLINTON IMBER, Justice. █ Judy Ann Bearden appeals the order of the Saline County Chancery Court terminating her parental rights with respect to her two oldest children. This appeal is before us on petition for review of the opinion issued by the Arkansas Court of Appeals in *Bearden v. Arkansas Dep't of Human Servs.*, 72 Ark. App. 184, 35 S.W.3d 360 (2000), reversing the chancery court's order. We have jurisdiction pursuant to Ark. Sup. Ct. R. 2-4(c). Upon a petition for review, we consider a case as though it had been originally filed in this court. *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000) (citing *Maxey v. Tyson Foods, Inc.*, 341 Ark. 306, 18 S.W.3d 328 (2000); *Woodall v. Hunnicutt Construction*, 340 Ark. 377, 12 S.W.3d 630 (2000); *White v. Georgia-Pacific Corporation*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999)). We hold that the chancellor's decision to terminate Ms. Bearden's parental rights must be affirmed.

Ms. Bearden is the natural mother of three children, Devin Bearden,[1] born August 23, 1993, Peppermint Koolaid Lacira Welsh,[2] born November 12, 1997, and Jaresha Ashley Dawn Welsh,[3] born August 8, 1999. On November 25, 1997, the Arkansas Department of Human Services ("DHS") filed a petition for emergency custody in the Saline County Chancery Court seeking emergency custody of newborn Peppermint, who was born five weeks premature and weighed only five pounds. Because of her small size, she had to be fed frequently and bundled to maintain her body temperature.

Ms. Bearden was discharged the day after she gave birth to Peppermint and did not contact the hospital again regarding her baby until the following day, November 14, 1997, when she expected the baby to be discharged. She contacted the hospital again at approximately 11:00 p.m. on November 15. When she did visit the hospital, personnel became concerned about Ms. Bearden's ability to care for the baby because, despite being given specific instructions to keep Peppermint warm, she kept unwrapping her. Ms. Bearden reported to hospital personnel that she had no place to go when she left the hospital with the baby, so she went to her mother's home even though she had recently been asked to leave that home. At the hearings, Ms. Bearden claimed to have a baby bed, diapers, and the ability to provide formula for the baby. However, DHS workers saw no evidence of these items, other than the diapers and formula sent home with the baby from the hospital. DHS workers also expressed concerns about Ms. Bearden's living conditions. Her mother's home was crowded, with no additional room for the baby. Ms. Bearden was ineligible for public housing. She had no income and was not receiving government benefits, such as Medicaid or Food Stamps. The workers were also concerned that, if Ms. Bearden was able to obtain employment, she would leave the baby in the care of her mother who suffered from memory loss. Finally, with regard to Peppermint's welfare, DHS workers testified that Ms. Bearden had received prenatal care only

---

[1] The parental rights of Devin's father, Gabriel Coll, were terminated by default simultaneously with the termination of Ms. Bearden's rights. The termination of Mr. Coll's parental rights is not before us in this appeal.

[2] Although DNA testing was conducted on two putative fathers during the course of this action, the trial court was ultimately unable to determine the paternity of Peppermint. The trial court ordered that the parental rights of any putative or unnamed father of Peppermint be terminated. That order is not appealed.

[3] DHS took custody of Jaresha on August 9, 1999, the day following her birth. She was subsequently adjudicated dependent-neglected, but that order is not part of the present appeal.

twice during her pregnancy, admitted to using cocaine during her pregnancy, and tested positive for both cocaine and marijuana following the birth of the baby.

A few weeks after taking Peppermint into custody, DHS also petitioned for emergency custody of Ms. Bearden's older child, Devin. DHS asserted that emergency custody was necessary because, on November 29, 1997, police were called to Ms. Bearden's home by concerned neighbors whose children informed them that Devin was sitting on the steps of his house smoking marijuana. According to the officer on the scene, Devin was running down the middle of the road when he arrived. Witnesses informed the officer that they had seen Devin smoking earlier. Devin admitted that he had been smoking, that he stole his cigarette from the table where his grandfather rolls his cigarettes, and that he lit the cigarette himself by turning on the gas stove. When asked if he knew what a joint was, Devin responded "tobacco," and when asked what he had been smoking, he responded "tobacco." He promised that he would not smoke anymore. The officer found marijuana mixed with tobacco and rolling papers on a table in Ms. Bearden's living room. When testimony of Devin's smoking activities was elicited at trial, Ms. Bearden spontaneously exclaimed: "He's been doing that since he's been in diapers and I whopped his butt for it and it didn't do no good."

Devin had been left in the care of Ms. Bearden's mother on the afternoon that he was taken into custody. Ms. Bearden's mother, upon questioning, became confused and talked repeatedly about spaghetti. The officer on the scene observed Devin's interaction with his grandmother while waiting for DHS to respond to his call. Devin's grandmother tried to catch him in the yard, but he ran away from her, threw sticks and rocks at her, and kicked her to break loose whenever she managed to get hold of him. After observing this, the officer took Devin into custody. Upon returning to the house after taking Devin to the police department, the officer, accompanied by a DHS investigator, encountered Ms. Bearden's father and uncle arriving home in an extremely intoxicated state.

Both children were adjudicated dependent-neglected on March 13, 1998, and counsel was appointed to represent Ms. Bearden. In various orders filed by the trial court during the dependency-neglect proceedings, Ms. Bearden was instructed to seek inpatient treatment for her drug problem, undergo a psychiatric evaluation, submit to random drug screens, and to enter into and

participate in the Women and Children in Sobriety Center. On August 6, 1998, the trial court entered an order finding that Ms. Bearden had not complied with the orders of the court by failing to complete a substance-abuse program, testing positive for cocaine at least once since the previous court hearing, failing to attend Alcoholics Anonymous regularly, and failing to complete a psychological evaluation. Ms. Bearden was again ordered to complete a psychiatric evaluation, attend Alcoholics Anonymous regularly and obtain a sponsor, complete parenting classes, and attend counseling. Ms. Bearden was held in contempt on November 13, 1999, for her failure again to abide by the court's orders to attend Alcoholics Anonymous regularly and obtain a sponsor, to complete parenting classes, and to submit to random drug screens.

Ultimately, on December 17, 1998, DHS filed a petition to terminate Ms. Bearden's parental rights with regard to both Devin and Peppermint. Although Ms. Bearden's counsel successfully obtained a continuance in the termination proceedings because Ms. Bearden was finally obtaining drug treatment, had applied for social security benefits, and had obtained employment, subsequent hearings revealed that she had resumed her drug abuse, tested positive for cocaine, had been denied social security benefits, and did not maintain her employment.

In support of termination, DHS offered evidence that Ms. Bearden had failed to (1) maintain a stable residence and was ineligible for public housing for three years; (2) obtain stable employment; and (3) complete drug-treatment or parenting classes. In addition, Ms. Bearden continued to use cocaine and repeatedly missed visitations or arrived late to visit her children. Although DHS successfully gained her entry to the Arkansas Cares treatment facility and agreed to an extended term of visitation so that Devin and Peppermint could live with her at the facility, Ms. Bearden was soon asked by Arkansas Cares to leave the facility. The children were again placed in foster care. Ms. Bearden entered other treatment facilities as well, but was never able to remain drug free. Every time she left a drug treatment facility she tested positive for cocaine. By the time the termination hearing occurred, Ms. Bearden's probation had been revoked and she was incarcerated because of her continued drug abuse, association with convicted felons, and inability to maintain a stable address. Ms. Bearden's probation officer testified that "[e]very time I talked to Judy, it was a new address. It was never the same, and also the continuous use of cocaine."

DHS also presented evidence that Ms. Bearden did not interact appropriately with her children during visitation. Rather than playing with the children and reading them stories, Ms. Bearden would sit on the sofa and talk about herself. When Devin approached her with toys and books, she would acknowledge him, but would not play with him or read the book. On one occasion, Ms. Bearden became irritated with the children after only thirty minutes and informed the worker that she was tired of the children already. She then sat on the sofa and talked to the worker for the remainder of the hour-long visitation.

In an order entered on October 16, 1999, the Saline County Chancery Court terminated the parental rights of Ms. Bearden with respect to her two oldest children, Devin and Peppermint. The trial court determined, as a basis for termination, that DHS had proven by clear and convincing evidence that Ms. Bearden "demonstrated repeatedly an inability or unwillingness to correct the problems that necessitated the removal of the children from her custody, specifically, maintaining a drug-free lifestyle, a stable home, and establishing stable employment." The trial court found that it would be futile and detrimental to the children's best interests, safety, and welfare to remain in the care and custody of Ms. Bearden, and consequently ordered that Ms. Bearden's parental rights be terminated. It is from this order that appeal is taken.

## I. Waiver of Counsel

For her first point on appeal, Ms. Bearden argues that the trial court deprived her of her right to waive the assistance of counsel at the termination hearing. In support of this argument, Ms. Bearden asserts that the constitutional right to the assistance of counsel at parental-termination hearings must necessarily carry with it the inverse right to waive that assistance if desired.

Whether due process requires the appointment of counsel in a particular parental-termination proceeding is a matter for the trial court to determine, subject to appellate review. *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 32, 101 S. Ct. 2153, 2162 (1981). Although it may be wise public policy for the States to adopt higher standards of protection for parents in dependency-neglect and termination proceedings, the threshold requirement for state courts in determining whether to appoint counsel to indigent parents in termination proceedings is fundamental fairness. *Id.*, 452 U.S. at 33-34, 101 S. Ct. at 2163. Consequently, according to the

Supreme Court, there is no absolute due process right to counsel in all parental-termination proceedings. *Id.* Rather, it is an issue that must be addressed on a case-by-case basis. *Id.* The State of Arkansas has chosen to allow the appointment of counsel for indigent parents in all parental-termination proceedings. Ark. Code Ann. § 9-27-316(h) (Supp. 1999). However, this is a State-conferred statutory right. The due process right to counsel arises only if the circumstances of each particular case indicate that fundamental fairness requires the appointment of counsel. *Lassiter v. Department of Soc. Servs., supra.*

▆▆ In the instant case, the trial court did not make a due process determination when appointing counsel to represent Ms. Bearden. However, assuming without deciding, that due process required the trial court to appoint counsel to represent Ms. Bearden in this matter, her waiver of that due process right must also satisfy constitutional standards. "It is ... well established that an accused has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of his constitutional right to the assistance of counsel in his defense. But every reasonable presumption must be indulged against the waiver of fundamental constitutional rights." *Akins v. State*, 330 Ark. 228, 237-38, 955 S.W.2d 483 (1997) (quoting *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996).

A waiver of the fundamental right to the assistance of counsel is valid only when:

(1) the request to waive the right to counsel is unequivocal and timely asserted;

(2) there has been a knowing and intelligent waiver of the right to counsel; and

(3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues.

*Collins v. State*, 338 Ark. 1, 6, 991 S.W.2d 541 (1999); *see also Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999).

In the instant case, the following colloquy occurred at the outset of the termination hearing:

THE COURT: Okay. I think it's ready for trial. I appointed Mr. Herzfeld to represent you, Ms. Bearden.

MS. BEARDEN:    Yeah, I know that.

THE COURT:    And he's talked to you, I know at least — well, he's talked to you several times. Has he explained to you what the purpose of this hearing is?

MS. BEARDEN:    Yes, he did.

THE COURT:    He indicated to me just moments ago that he thought you weren't interested in him representing you, is that true?

MS. BEARDEN:    Yes, it is, but I really don't know what to do, to be honest with you. I've never heard anything or seen anything like this in my life.

THE COURT:    I know. That's why I appointed Mr. Herzfeld to represent you. I mean, I certainly won't force him to if you are going to insist that he not.

MS. BEARDEN:    Uh, I think I would rather represent myself.

THE COURT:    Okay. You just got through telling me you didn't have any idea what was going on here and you've never been involved in anything like this in your life.

MS. BEARDEN:    I said I've never seen or heard of a case like this before where —

THE COURT:    Why wouldn't you want Mr. Herzfeld to represent you?

MS. BEARDEN:    Because I —

THE COURT:    He's a licensed attorney who does know what's going on.

MS. BEARDEN:    He does, I know. I do, too. I know what's going on, too, sir.

THE COURT:    Well, you don't want him to represent you?

MS. BEARDEN:    (*No oral response.*)

THE COURT: I'm going to order that he represent you anyway.

MS. BEARDEN: Okay.

THE COURT: Unless you have some alternative. Do you have another attorney?

MS. BEARDEN: No.

■ Ms. Bearden was far from unequivocal in her request to waive counsel. When asked by the court if it was true that she wanted to waive counsel, Ms. Bearden responded that she "really [did not] know what to do." She later stated that she *thought* she wanted to represent herself, but when again asked if she did not want counsel to represent her, she gave no response. Because of the equivocal nature of Ms. Bearden's request, the trial court did not err in refusing to allow her to proceed *pro se*. *See Collins v. State, supra.*

Ms. Bearden argues alternatively that the trial court was not authorized pursuant to Arkansas Code Annotated section 9-27-316 to force counsel upon her. The State argues, conversely, that the statute does not authorize the parent to waive the assistance of counsel once counsel has been appointed.

> (1) In all proceedings to remove custody from a parent or guardian or to terminate parental rights, the parent or guardian shall be advised, in the dependency-neglect petition or the ex parte emergency order and the first appearance before the court, of the right to be represented by counsel at all stages of the proceedings and the right to appointed counsel if indigent.

> (2) Upon request by a parent or guardian and a determination by the court of indigence, the court shall appoint counsel for the parent or guardian in all proceedings to remove custody or terminate parental rights of a juvenile.

Ark. Code Ann. § 9-27-316(h) (Supp. 1999).

■ Although the court of appeals held that indigent parents have the right to waive counsel pursuant to section 9-27-316(h), that determination was premature. *Bearden v. Arkansas Dep't of Human Servs.*, 72 Ark. App. at 187-88, 35 S.W.3d at 362. Ms. Bearden argued that she had a due process right to the appointment

of counsel and, therefore, necessarily had the right to waive that counsel. Assuming, without deciding, that Ms. Bearden did have a due process right to counsel, her request to waive counsel was not unequivocal. It would, therefore, have been error for the trial court to accept that waiver, regardless of the provisions contained in the statute, because her request did not satisfy constitutional standards for the waiver of counsel.

## II. Sufficiency of the Evidence

■■ ■■ "Where the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the juvenile's perspective," DHS may move to terminate the parental rights of a child for whom the agency is attempting to clear permanent placement. Ark. Code Ann. § 9-27-341(a) (Supp. 1999).

> We have held that when the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *J.T. v. Arkansas Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Wade v. Arkansas Dep't. of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* The facts warranting termination of parental rights must be proven by clear and convincing evidence. In reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. *Baker v. Arkansas Dep't. of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000). Clear and convincing evidence is that degree of proof which will produce in the factfinder a firm conviction regarding the allegation sought to be established. *Id.* In resolving the clearly erroneous question, we must give due regard to the opportunity of the chancery court to judge the credibility of witnesses. Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *Id.*

*Ullom v. Arkansas Dep't of Human Servs.*, 340 Ark. 615, 621, 12 S.W.3d 204 (2000).

An order forever terminating parental rights must be based upon clear and convincing evidence that the termination is in the best interests of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). In addition to determining the best interests of the child, the court must find clear and convincing evidence that circumstances exist that, according to the statute, justify terminating parental rights. Ark. Code Ann. § 9-27-341(b)(3)(B). One such set of circumstances that may support the termination of parental rights is that the child "has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a). It is not necessary that the twelve-month period out of the home be consecutive. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b).

There is no dispute that Devin and Peppermint were adjudicated dependent-neglected on March 13, 1998, that they continued out of the home for more than twelve months, and that the conditions causing their removal from the home had not been remedied at the time of termination. Ms. Bearden argues on appeal, however, that the trial court erred because (1) there was insufficient evidence presented at the termination hearing to support the initial removal of the children from her home; (2) there was insufficient evidence that DHS made a meaningful effort to rehabilitate Ms. Bearden's home and correct the conditions that caused the removal; and (3) there was insufficient evidence that reunification was not in the best interests of the children.

■■ In support of her argument that the State should have presented sufficient evidence at the termination hearing to support the initial decision to remove the children from her custody, Ms. Bearden argues that the state is required to present its entire case against the parent in the final termination hearing. However, the case of *Briscoe v. State*, 323 Ark. 4, 912 S.W.2d 425 (1996), upon which Ms. Bearden relies, does not stand for this proposition. *Briscoe* only states that it was harmless error for a trial court to conduct hearings in violation of the parent's right to counsel because the parent was represented by counsel at the final termination hearing, and all of the evidence that had been presented at the hearings without counsel was again introduced and was subject to cross-examination by counsel at the final hearing. This holding is

peculiar to the facts of the *Briscoe* case and does not stand for the proposition that, in all termination hearings, the evidence presented at all prior hearings in the case must be reintroduced at the final hearing. To the contrary, the proceedings and orders pertaining to a termination-of-parental-rights case are a continuation of the dependency-neglect case and the evidence adduced at the dependency-neglect proceedings may be considered by the court during termination proceedings. *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 361, 990 S.W.2d 509 (1999). A review of the evidence set out above clearly demonstrates grounds for adjudicating the children dependent-neglected and removing them from the care of their mother. In any event, section 9-27-341(b)(3)(B)(i)(a) does not require a second dependency-neglect adjudication at the final hearing. It simply requires DHS to prove that the children have been adjudicated dependent-neglected.

■ Ms. Bearden next argues that there was insufficient evidence that DHS took meaningful efforts to rehabilitate her home and correct the conditions that caused removal. We disagree. According to testimony, DHS workers provided Ms. Bearden with transportation, referrals to psychiatric treatment, drug abuse treatment, and parenting classes. They transported her children to visit her when she was in treatment or in jail, and contacted HUD regarding her eligibility for public housing. Unfortunately, Ms. Bearden failed to take advantage of any of the forms of assistance she was offered. Despite DHS's attempts to provide drug treatment for Ms. Bearden, which they repeatedly stated was the primary objective in advancing the case plan, Ms. Bearden withdrew herself from all treatment programs, failed to attend Alcoholics Anonymous or Narcotics Anonymous programs with any consistency, and repeatedly tested positive for cocaine use. DHS even made it possible for Ms. Bearden to enter a residential program with her children, but she failed to conform to the standards of the center and was asked to leave the program, resulting in DHS again placing the children in foster care. Ms. Bearden's argument that DHS failed to prove that it made a meaningful effort to assist her in reunification is without merit.

■ Finally, Ms. Bearden argues that there was insufficient evidence that reunification was not in the best interests of the children. Again, we disagree. Evidence was presented that the foster family with whom the children were living wanted to adopt them. The children had been out of their mother's care for nearly two full years, and for Peppermint the separation began at birth. Ms. Bearden was incarcerated for drug abuse at the time of termination

and would not be released on parole until she was able to obtain stable housing, a feat she had been unable to accomplish in the two years pending termination of her parental rights. She had been unable to maintain steady employment when not incarcerated, continued to test positive for drugs, and refused to obtain treatment. Finally, case workers testified that they were concerned about the potential harm to the children that could occur by having to live in continued uncertainty. The children existed in a constant state of anticipation, waiting for visitations with their mother from week to week for which Ms. Bearden frequently did not appear or at which she did not interact with the children. According to the caseworkers, Devin and Peppermint were in need of permanency after two years of uncertainty. This is the objective of the termination procedure, and cannot be lightly discounted. Ark. Code Ann. § 9-27-341(a).

▮ For these reasons, we hold that the trial court did not err in finding clear and convincing evidence to support the termination of Ms. Bearden's parental rights with regard to Devin and Peppermint.

Affirmed.