Joyce CARROLL and Mark Murphy *v.* ARKANSAS
DEPARTMENT of HUMAN SERVICES

CA 03-788 148 S.W.3d 780
Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered February 25, 2004

*White and Watson*, by: *Janette K. McKinney*, for appellants.

*Gray Allen Turner*, for appellee.

*Janet L. Bledsoe*, attorney *ad litem*.

A NDREE LAYTON ROAF, Judge. Joyce Carroll and Mark Murphy appeal from an order terminating parental rights to their two daughters. Their sole argument on appeal is that the trial court erred in finding that termination was in the best interest of the children because there was not clear and convincing evidence that there would be potential harm to the children by continued contact with them. We affirm.

Arkansas Department of Human Services (DHS) filed a Petition for Emergency Custody for appellants' minor children, A.M. and C.M., alleging that the children were dependent-neglected due to ongoing exposure to drugs, pornography, and lack of a stable home and financial support. Specifically, the petition stated that Joyce and her minor children resided in a motel; that Mark was incarcerated; that the children had been abandoned, abused, neglected, and sexually abused; and that removal was necessary for the protection of the minor children.

The affidavit attached to the petition indicated that on February 14, 2002, Joyce Carroll took a Polaroid photograph to the Rogers Police Department of her two-year-old daughter, A.M., holding a man's penis. Detective Debbie Crews contacted a DHS worker with information on the child pornography case, and a search warrant was issued for Joyce's home where another pornographic photo of A.M. was found, along with adult pornography and drug paraphernalia. Darrell Nash was arrested for child pornography, rape, and sexual assault. Joyce and the children lived with Nash for a year while he exposed the children to pornographic magazines, smoked marijuana in their presence, shot crank, and left syringes in places accessible to the children. The affidavit described the house as a typical "crank house," and alleged that Joyce and Mark would blow marijuana smoke in the children's faces to help them sleep.

The affidavit also stated that Joyce had a prior history with DHS. According to the affidavit, she was turned over to DHS after her stepfather sexually abused her. This abuse resulted in a preg-

nancy. On Joyce's eighteenth birthday, she and her child were released from foster care. Joyce's child was removed from her in September 1997 due to abandonment, and her parental rights were terminated in October 1998. Another child, Nicholas Murphy, born to Joyce Carroll in 1998, is in the custody of Mark's relatives.

On February 28, 2002, at the probable cause hearing, Joyce and Mark stipulated to probable cause. Based on their stipulation, the court found that probable cause existed and that the best interest of the children mandated that they remain in DHS's custody, pending an adjudication hearing. An adjudication hearing was held on March 26, 2002, and Joyce and Mark again stipulated to the allegations set forth in the affidavit. The trial court ordered Joyce and Mark to obtain stable employment; obtain and maintain stable, safe, and appropriate housing; attend and complete twenty hours of parenting classes; complete drug and alcohol assessments; comply with the homemaker services; attend counseling; attend regular visitation with their children; obtain safe and reliable transportation; obtain and complete an affidavit of financial means; and make child support payments in accordance with state law, with a minimum payment of $35 per week.

Review hearings were held in June and September 2002. DHS presented evidence that, while there was partial compliance with the case plan, the parents were expending over $750 per month to live in motels, having declined to live at the Salvation Army or in areas with Hispanic populations; that both parents had refused to complete drug screening and drug testing in July and September; that they had not paid court ordered child support; and that they had completed only two of the twenty hours of required parenting classes. At the final review hearing, the trial court commented on the parents' refusal to seek housing in certain areas, and their choice to continue to live in hotels despite their meager income. The court ordered Joyce and Mark to submit to random drug tests twice a month. Joyce and Mark were directed to provide certificates of completion for the parenting classes immediately to DHS, and to make arrangements for counseling.

At the permanency planning hearing, held on November 26, 2002, DHS recommended termination. There was evidence that Mark and Joyce still had not found their own housing, and continued to refuse drug testing. At the conclusion of the permanency hearing, the court stated that the lack of stable housing and

suspected drug abuse continued to be a problem. Following DHS's recommendation, the court ordered a termination hearing for February 20, 2003.

The termination hearing was held on March 3, 2003. The previous hearings were incorporated by reference and a copy of an order terminating Joyce Carroll's parental rights on October 27, 1998, was introduced into evidence. Additionally, the evidence showed that Joyce and Mark had not completed their counseling sessions, nor had they consistently complied with the random drug test. Both parents had tested positive for marijuana. They had moved from place to place a total of twelve times, and did not have stable housing or reliable transportation of their own. While Mark had held several jobs, Joyce had not been consistently employed, and the parents had not paid the court-ordered child support. The caseworker assigned to A.M. and C.M. testified that the girls were in foster care, were receiving services, and that it is likely that they will be adopted. As a result, the court ordered termination of Joyce and Mark's parental rights.

On appeal, Joyce and Mark argue only that the trial court erred in finding by clear and convincing evidence that continued contact with them would result in a likelihood of potential harm to their children. They contend that in order to terminate the parental relationship, DHS must prove by clear and convincing evidence both a statutory basis for termination and that termination is in the best interest of the child. They do not contend that there was not sufficient proof of a statutory basis for termination, but challenge only the sufficiency of the proof as to the best interest of the children. They argue specifically that, while evidence presented raised issues that were of concern to DHS as to why the children could not return home, the proof failed to establish by clear and convincing evidence that continued contact with the parents would potentially harm the children. They cite no authority for their argument, and do not say what the "continued contact," would be in the context of this proceeding, in terms of visitation, supervised or not, or in terms of outright return of custody.

It is well settled that grounds for termination of parental rights must be proven by clear and convincing evidence. *M. T. v. Arkansas Dep't of Human Servs.*, 58 Ark. App. 302, 305, 952 S.W.2d 177, 179 (1997). When the burden of proving a disputed fact is by "clear and convincing evidence," the question on appeal is whether the trial court's finding that the disputed fact was

proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). This court reviews termination of parental rights cases *de novo. Id.*

 The goal of Arkansas Code Annotated section 9-27-341 is to provide permanency in a minor child's life in circumstances in which returning the child to the family home is contrary to the minor's health, safety, or welfare, and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the minor child's perspective. Ark. Code Ann. § 9-27-341(a)(3) (Supp. 2003). Parental rights may be terminated if clear and convincing evidence shows that it is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2003). Arkansas Code Annotated section 9-27-341 provides in pertinent part: . .

> An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
>
> (A) That it is in the best interest of the juvenile, *including consideration of the following factors*:
>
>> (i) The likelihood that the juvenile will be adopted if the termination petition is granted;
>>
>> (ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent, parents, putative parent or parents.

(Emphasis added). Therefore, the plain language of the statute provides that the court must find by clear and convincing evidence that termination is in the child's best interest, giving consideration to the risk of potential harm. The risk of potential harm is but a factor for the court to consider in its analysis.

We agree that there must be clear and convincing evidence that termination is in the children's best interest. In *Conn v. Arkansas Department of Human Services*, 79 Ark. App. 195, 85 S.W.3d 558 (2002), the appellate court reversed a decision to terminate parental rights where there was no clear and convincing evidence that termination was in the child's best interest. In *Conn*, DHS submitted evidence that the appellant's parental rights had been terminated to the child in question's sibling. Because DHS put on no other evidence whatsoever, this court reversed, holding that DHS must show by clear and convincing evidence the grounds for termination *and* show by clear and convincing evidence that the termination is in the child's best interest.

■ However, in the case before us, there was a great deal of evidence presented by DHS on the issue of whether it would be in the children's best interest for parental rights be terminated. The evidence demonstrated that potential harm might result if Joyce and Mark continued contact with A.M. and C.M., including the fact that this case arose primarily from appellants' ongoing and adverse living arrangements that resulted in sexual abuse of their two-year-old daughter, exposure to drug use, pornography, and an unsafe environment, which prompted DHS's involvement in the first place. Significantly, Joyce and Mark persistently failed to secure stable housing for their family throughout the course of this case, choosing to stay in costly motels or overcrowded apartments. They lived in twelve different locations, refused shelter at the Salvation Army, and refused to seek housing in areas where other ethnic groups reside. Their failure to secure safe and appropriate housing of their own is contrary to their children's well-being and best interest. *See Bearden v. Arkansas Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001); *Dinkins, supra.*

■ Joyce and Mark also failed to secure stable employment. While Mark was employed off and on, he was not able to secure finances that would provide meaningful support for his family, including stable housing. The failure to secure stable employment is contrary to the girls' health and safety, *see Dinkins, supra*, and supports the trial court's decision to terminate their parental rights. *Bearden, supra; Dinkins, supra.*

■ ■ Additionally, appellants failed to complete their weekly counseling sessions, and they refused on several occasions to submit to random drug testing. In fact, both Joyce and Mark tested positive for marijuana on February 11, 2003, after their

permanency planning hearing. The February drug test results demonstrate an indifference to remedying the problems plaguing their family. Their indifference to remedying these conditions is contrary to their children's health, safety, and well-being, and the court's decision to terminate their parental rights was not clearly erroneous. *See Ullom v. Arkansas Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000).

The dissent contends that we may not affirm this case based upon the appellants' stipulation to probable cause, because the facts contained in DHS's affidavit are not in evidence as admissions by virtue of the stipulation to probable cause. There are several problems with this position. First, the appellants, through their counsel, stipulated to both probable cause and the later adjudication of dependency/neglect based upon the same affidavit. The trial court explicitly stated that the finding of probable cause was based upon the stipulation and the information available in the affidavit. The dissent asserts, without authority, that the trial court could consider the evidence contained in the affidavit only for the purpose of the emergency probable cause hearing, and does not address the appellants' stipulation to the same facts at the subsequent adjudication hearing.

In *Price v. Price*, 29 Ark. App. 212, 780 S.W.2d 342 (1989), this court stated that:

> Agreed stipulations of what a witness would testify to if present is an accepted method of presenting proof. The stipulation is accepted only as testimony and not as an admission of the facts testified to. The trier-of-fact is free to give it such weight as it deserves and is free to accept it or reject it in whole or in part. [Citations omitted.]

Clearly, the trial court was authorized to consider the evidence contained in the DHS affidavit as testimony, and to accept or reject it in whole or in part.

Moreover, in this appeal, appellants do not challenge the use of the affidavit, or even the sufficiency of the evidence of a statutory basis for termination. Accordingly, the sufficiency of the evidence to support removal of the children and to support the adjudication of dependency/neglect, for which the affidavit was used, are not issues which even need to be addressed in this appeal.

It is also important to note that, while again not an issue raised by appellants, at least three separate bases existed for terminating their parental rights. First, reunification shall not be

required if a court of competent jurisdiction, including the juvenile division of circuit court, has determined by clear and convincing evidence that the parent has: subjected the child to aggravating circumstances; or [h]ad their parental rights involuntary terminated as to a sibling of the child. Ark. Code Ann. § 9-27-303(45) (Supp. 2003). Aggravating circumstances include the determination made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-303(6)(B) (Supp. 2003). In this case, the circuit court's order found that Joyce and Mark subjected their minor children to aggravating circumstances, and noted that Joyce Carroll's parental rights were terminated as to another child in October 1998. Further, the children were out of the home for more than twelve months, and the parents failed to remedy the circumstances causing their removal even after being provided with substantial reunification services. *See Johnson v. Arkansas Dep't of Human Servs.*, 78 Ark. App. 112, 82 S.W.3d 183 (2002). "One set of circumstances that may support the termination of parental rights is that the child 'has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused the removal, those conditions have not been remedied by the parent'." *Id.* (citing Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Repl. 2002)). Appellants also failed to provide significant material support by failing to pay the court ordered child support. Ark. Code Ann. § 9-27-341(b)(1)(B)(ii)(a) (Supp. 2003) ("Material support consists of either financial contributions or food, shelter, clothing, or other necessities whether such contribution has been requested by the juveniles custodian or ordered by a court of competent jurisdiction.").

Affirmed.

STROUD, C.J., ROBBINS, GRIFFEN, and BIRD, JJ., agree.

BAKER, J., dissents.

KAREN R. BAKER, Judge, dissenting. The majority affirms this case based upon the conclusion that when appellant stipulated to probable cause at the probable-cause hearing, she stipulated that each and every allegation set forth in the affidavit attached to the petition was true. That is not the case.

Appellant's stipulation to probable cause was nothing more than an acknowledgment that if the preparer of the affidavit testified, the testimony would be that which was contained in the affidavit. While the judge could consider the testimony in the affidavit, which contained hearsay for purposes of this emergency proceeding, he could not find the allegations in the affidavit to be deemed admitted. *See Price v. Price,* 29 Ark. App. 212, 780 S.W.2d 342 (1989); *Burton v. Brooks,* 25 Ark. 215 (1868) (holding that where parties stipulate that an agreed statement of what an absent witness would testify to if present may be read to a jury, this statement goes to the jury simply as testimony, and not as an absolute admission).

Hearsay is not excluded at the probable cause hearing and the affidavit was filled with hearsay upon hearsay. No separate evidence of the facts alleged in the complaint and upon which the majority relies was introduced. Without those allegations being deemed as admitted, there is insufficient evidence to support the trial court's termination of parental rights.

For us to hold that a parent's stipulation to probable cause results in an admission of each alleged fact is legally and procedurally unsound. First, the purpose of a probable cause hearing is specifically limited "to the purpose of determining whether probable cause existed to protect the juvenile and to determine whether probable cause still exists to protect the juvenile." Ark. Code Ann. § 9-27-315 (B)(i) (Repl. 2002 & Supp. 2003). Although no case law directly addresses this issue, our supreme court has addressed the question of admissibility of testimony from a preliminary hearing to determine probable cause in the context of a criminal case. In *Scott v. State,* 272 Ark. 88, 92-93, 612 S.W.2d 110, 112-13 (1981), the Arkansas Supreme Court stated:

> There has traditionally been an exception to the right of confrontation where a witness who testified at a prior trial is unavailable at a later judicial proceeding. State evidentiary rules can fall within this exception if two tests are met. First, the witness must be "unavailable".... Next, the evidence must be reliable.... [A]dmission depends upon the circumstances surrounding the hearing. In the case of a preliminary hearing admission depends upon what kind of hearing is involved and whether it is a "full fledged" hearing or a limited one.

(Citations omitted.) *Compare Hamblen v. State,* 44 Ark. App. 54, 866 S.W.2d 119 (1993) (holding that testimony of child's mother during

temporary-custody probable-cause hearing regarding defendant father's shaking of child, where defendant proceeded without counsel, was admissible under hearsay exception for former testimony, because the defendant's motive to develop the testimony in the chancery case was very similar to his motive in the criminal case *i.e.,* to avoid any implications of child abuse).

In *Scott v. State, supra,* the court found that the transcript of the probable cause hearing was not reliable because it violated the rules of evidence and violated the defendant's Sixth Amendment right to confront a witness. The court reasoned that:

> The appellants were represented by attorneys but were not obligated to cross-examine the witness. To presume that they should have done so would be to presume that they knew that the testimony could be used later in the absence of the witness. That would mean a preliminary hearing could not be one solely to learn if only probable cause existed.

*Id.* at 95, 612 S.W.2d at 113. The sole purpose of the probable cause hearing is to determine whether probable cause existed. Ark. Code Ann. § 9-27-315 (B)(i).

Second, this limitation is necessary given the emergency nature of probable cause hearings and given that "[a]ll probable cause hearings are miscellaneous hearings as defined in Rule 1101(b)(3) of the Arkansas Rules of Evidence, and the rules of evidence, including, but not limited to, the Hearsay rule, Rule 802 of the Arkansas Rules of Evidence, are not applicable." Ark. Code Ann. § 9-27-315 (e) (Repl. 2002 & Supp. 2003). Hearsay is accepted for the purpose of the hearing, that is, for the limited purpose of determining whether a cause of action can be articulated. As the court in *Scott* made evident, the testimony from such a hearing is not reliable if it fails to conform with the rules of evidence. *Scott,* 272 Ark. at 94; 612 S.W.2d at 111. Therefore, the facts alleged in the affidavit could not be considered as evidence.

Without the admission of those facts into evidence, insufficient evidence supports the termination of parental rights. Regarding the employment issues, the testimony was that Mark was consistently employed even though he had various jobs throughout the time period. In fact, his reluctance to apply for housing in another community was based on transportation considerations related to his employment. The majority's characterizations of the

parent's refusal to seek housing and their choice to live in hotels despite their meager incomes ignores DHS's testimony that they had no resources to provide deposits and initial monies for establishing other living arrangements and that no other non-profit groups would assist in providing those resources. Neither did the Department's case plan address this housing issue. The majority also ignores the year long waiting list for local housing options. As for the drug test, a single failed drug test for marijuana falls short of the burden to terminate parental rights.

Therefore, I would reverse.