

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–818

| | |
|---|---|
| MELODY HUNTER<br>APPELLANT | **Opinion Delivered** February 10, 2016 |
| V. | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT<br>[NO. JV-2014-12] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br>APPELLEE | HONORABLE LEE WISDOM HARROD, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## CLIFF HOOFMAN, Judge

Appellant Melody Hunter appeals from the order of the Izard County Circuit Court terminating her parental rights to her son, R.H.[1] Hunter's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6–9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's motion and brief to Hunter's last-known address informing her of her right to file pro se points for reversal; however, she has not done so. We grant counsel's motion to withdraw and affirm the order of termination.

On December 12, 2013, the Arkansas Department of Human Services (DHS) opened

---

[1] Hunter has three additional children who are not a part of this case. In addition, the parental rights of R.H.'s putative father, David Brinkman, Jr., were not terminated in this order, and he is not a party to this appeal.

a protective-services case on the family when R.H. (DOB 11/03/2013) tested positive for THC at birth. On March 27, 2014, DHS exercised a seventy-two-hour hold on R.H. after Hunter had been arrested for interfering with governmental operations and criminal trespassing. Hunter also tested positive for marijuana, opiates, and oxycodone at that time. A petition for emergency custody of R.H. was filed on March 28, 2014, and the circuit court granted the petition on April 2, 2014. Probable cause for removal was found in an order entered on April 9, 2014.

The adjudication hearing was held on June 9, 2014. The circuit court found by a preponderance of the evidence that R.H. was dependent-neglected based on inadequate supervision by Hunter due to her drug use and participation in criminal activity. The court set the goal of the case as reunification with Hunter, with a concurrent goal of guardianship or adoption. Hunter was ordered to refrain from the use of controlled substances and to comply with the case plan and court orders. She was allowed supervised visitation with R.H. at the discretion of DHS.

At a review hearing held in July 2014, the circuit court found that Hunter was in partial compliance with the case plan. She had obtained employment and housing but had not completed her drug-and-alcohol assessment, participated in visitation, or remained drug free. The court noted that DHS had filed a motion for termination of reunification services but found that Hunter's progress, although slow, was sufficient to deny the motion. The court ordered Hunter to work diligently toward completion of the case plan, and she was further ordered to appear at the DHS office at least two times per week to advise the caseworkers of

SLIP OPINION

her progress.

At the September 2014 review hearing, the circuit court found that Hunter had not complied with the case plan in that she had not participated in visitation, she had failed to remain in contact with DHS as ordered at the previous hearing, and she had not remained drug free. Another review hearing was held in January 2015. The circuit court found that Hunter was still not in compliance with the case plan and that she was not drug free, even though she was currently pregnant. The court further noted that Hunter had not visited with R.H. for several months.

The permanency-planning hearing was held in March 2015. The circuit court found that Hunter had not complied with the case plan or court orders and changed the goal of the case to termination of parental rights and adoption. DHS filed a petition to terminate Hunter's parental rights on April 30, 2015, and alleged three separate grounds for termination: (1) that the juvenile had been adjudicated by the court to be dependent-neglected and had continued out of the home for twelve months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions had not been remedied by the parent; (2) that the juvenile had lived outside of the home of the parent for a period of twelve months and the parent had willfully failed to maintain meaningful contact with the juvenile; and (3) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to

remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent. DHS further alleged that termination was in the best interest of R.H.

The termination hearing was held on July 1, 2015. Wendy Hutchins, who was the caseworker assigned to the family, testified that she had provided services to Hunter, such as supervised visitation and referrals for a psychological evaluation, counseling, and drug treatment. Hutchins stated that Hunter had completed parenting classes and the psychological evaluation but had not completed her counseling sessions. In addition, although Hunter had completed a drug-and-alcohol assessment, she had failed to complete either inpatient or outpatient drug treatment despite Hutchins's repeated offers to take her to treatment. Hutchins indicated that Hunter had continued to use drugs throughout the case. At the time of the termination hearing, Hunter was incarcerated for shoplifting, and she had tested positive for methamphetamine and marijuana at the time of her arrest two weeks prior to the hearing. Furthermore, Hutchins testified that Hunter had visited R.H. on only three occasions since his removal, and she had not had any visits with the child since June 2014. Hutchins indicated that Hunter had failed to visit R.H. or maintain contact with DHS as ordered by the circuit court even though she resided within walking distance of the DHS office and, during part of the case, lived only fifty steps from the office.

According to Hutchins, Hunter had failed to remedy either of the issues that caused removal of R.H., which were Hunter's drug use and her criminal activity. Hutchins testified that R.H. was adoptable and that she had spoken with an adoptive parent who was interested

in adopting him. She stated that there would be potential harm to R.H. if he were to be returned to the custody of his mother based on Hunter's drug addiction, her criminal behavior, and her confrontational and threatening demeanor. Hutchins testified that two of Hunter's other children had to be hospitalized because they were addicted to illegal drugs at birth, and she indicated that Hunter has a history of drug addiction and failure to protect her children. Hutchins was also concerned about Hunter's association with persons who were involved in criminal activities.

Hunter admitted that R.H. had been out of her custody for more than one year and that she had failed to complete the case plan. She indicated that she had not completed her outpatient drug treatment because she did not have a vehicle; however, she could not explain why she did not call Hutchins or another caseworker to request transportation. She admitted that Hutchins had offered to take her to inpatient treatment and that she had refused. Hunter further admitted that she had used marijuana throughout the case and indicated that the longest period of time that she had been drug free was for two or three weeks. She testified that she had also recently started using methamphetamine again. Hunter stated that she had visited with R.H. for only approximately five hours total since his removal because she could not pass a drug screen. Hunter agreed that R.H. could not be returned to her custody at that time due to both her current incarceration and her drug addiction. However, she testified that she had changed and that she was now ready to attend inpatient drug rehabilitation. She requested that the circuit court not terminate her parental rights and that R.H. be placed with his grandfather temporarily until she was able to complete the drug treatment that she needed.

David Brinkman, Sr., R.H.'s grandfather, testified that he had visited with R.H.'s foster parents and that he believed that it was in the child's best interest to remain with his foster parents. He therefore indicated that he was not attempting to seek custody of R.H.

Following the hearing, the circuit court entered an order on July 16, 2015, finding that there was clear and convincing evidence to support termination of Hunter's parental rights on all three grounds alleged in the petition and that termination was in R.H.'s best interest. Hunter filed a timely notice of appeal from the circuit court's decision. Her counsel has filed a no-merit brief, contending that there are no meritorious issues for appeal.

As counsel correctly asserts, the only ruling adverse to Hunter during the termination proceeding was the circuit court's decision to terminate her parental rights. A trial court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins*, 344 Ark. 207, 40 S.W.3d 286. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3)(A), an order terminating parental rights

6

shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

The circuit court's order in this case found clear and convincing evidence to support all three grounds alleged in the termination petition; however, only one ground must be proved to support termination. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). In her brief, counsel focuses solely on the twelve-months ground found in Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, which provides "[t]hat a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent."

R.H. was removed from Hunter's custody when she was arrested on March 27, 2014, and he was adjudicated dependent-neglected based on Hunter's drug use and criminal activity. At the termination hearing in July 2015, Hunter was again incarcerated and tested positive for illegal drugs. She admitted that she had continued to use marijuana throughout the case and that she needed inpatient drug treatment to combat her addiction. Based on this evidence, we agree with counsel that there is no meritorious issue that could be raised on appeal with regard

to the grounds for termination.

There is also no issue of arguable merit that could be raised regarding the circuit court's finding that termination was in R.H.'s best interest. The court found that R.H. was adoptable based on Hutchins's testimony that she had identified an adoptive family willing to adopt him. The court also found that R.H. would be at risk of potential harm if he were returned to Hunter's custody based on her unresolved substance-abuse issues, her incarceration, the lack of a residence or income to support the child, and her own admission that she had failed to remedy the conditions causing R.H.'s removal. We have previously held that a parent's continued drug use demonstrates an indifference to remedying the conditions causing removal and that this indifference is contrary to the children's health, safety, and well-being. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004). Thus, we agree with counsel that there would be no merit to an appeal challenging the termination of Hunter's parental rights.

Based on our review of the record and the brief submitted, we conclude that counsel has complied with Ark. Sup. Ct. R. 6-9(i), and we agree that the appeal is without merit. Therefore, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GRUBER and WHITEAKER, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

No response.