2010 Ark. App. 798

Dalesha WELCH, Appellant

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee

No. CA 10–699.

Court of Appeals of Arkansas.

Dec. 1, 2010.

Deborah Ruth Sallings, Little Rock, for appellant.

Bristow & Richardson P.L.L.C., Melissa Bristow Richardson, Jonesboro, Tabitha Baertels McNulty, Little Rock, for appellee.

RITA W. GRUBER, Judge.

⌊Dalesha Welch appeals from the Washington County Circuit Court's order terminating her parental rights to her daughter, B.W., born July 9, 2006. On appeal, Welch argues that the circuit court erred in finding that it was in B.W.'s best interest for Welch's parental rights to be terminated.[1] We affirm.

---

1. The hearing on the termination of the puta- tive father's parental rights

Welch was a sixteen-year-old minor when she gave birth to B.W. The Department of Human Services (DHS) took B.W. into emergency custody on February 8, 2008, when a hospital reported that both Welch and B.W. had tested positive for methamphetamine and Welch admitted to the caseworker that she had been using methamphetamine over a period of six months. At the time of B.W.'s removal, B.W.'s legal custodians were Welch's mother and stepfather, Trena and Jeremy Roberts, due to Welch having been placed on probation by the juvenile court on a theft charge. The court issued its order for emergency custody on February 11, 2008.

The court later found probable cause for entry of the emergency order. The court ordered no visitation between Welch and B.W. or between B.W. and her grandmother and step grandfather. DHS was ordered to have a comprehensive developmental assessment done on B.W. and to ensure that all of her shots and other medical needs were met.

On April 3, 2008, the court held an adjudication hearing and found B.W. dependent-neglected as a result of neglect and parental unfitness, both by Welch and by her mother and stepfather.[2] The goal of the case was to be reunification with Welch, who was allowed supervised visitation twice per week. The court ordered Welch to, *inter alia,* complete a psychological evaluation and individual counseling; refrain from illegal drug use; submit to and pass random drug tests; and complete parenting classes with the ability to demonstrate appropriate parenting after completion of the classes. Welch was also ordered to comply with the terms of her probation and follow the case plan as modified. Finally, the court found that Welch was able to pay child support and ordered her to pay $25 per week.

A review hearing was held on August 6, 2008. The court found that Welch continued to be unstable and had not addressed her parenting or drug-addiction issues. Although the court found that Welch had completed twelve hours of parenting classes and passed six drug screens, she had not attended visitation with B.W., submitted to a psychological evaluation, or attended counseling. Welch had also been arrested twice since the adjudication hearing and had failed to pay child support as ordered. The court further found that Welch's excuses for her noncompliance were not legitimate. In addition to the prior orders, Welch was ordered to follow the terms of her probation, successfully complete the drug-court program, not drive on a suspended license, obtain her GED by September 3, 2008, follow the case plan, and attend all of her visitation with B.W.

A permanency-planning hearing was held on February 11, 2009. The court continued the goal of reunification, finding that Welch had complied with all of the court's orders and the case plan. This included attending counseling, complying with the drug-court program, passing drug screens, paying child support, and cooperating with DHS. The court noted that Welch had made some progress toward alleviating the problems that led to B.W.'s removal. However, the court noted that Welch had been arrested on August 14, 2008, for failure to appear. The court

---

**2.** The court noted that Welch, her mother, and her stepfather had been arrested on the day B.W. entered foster care. Welch was arrested for endangering the welfare of a minor and her mother was arrested on an unspecified misdemeanor. Welch's stepfather was arrested for possession of drug paraphernalia. Welch's mother had tested positive for meth and admitted at the probable-cause hearing that she had used the drug.

authorized Welch to have four hours of unsupervised visitation every Thursday once her fiance Chad Hunt passed a drug screen. The visitation could be expanded to include overnight visitation.

The court also found that Welch was in willful contempt for the period of April 2008 through August 6, 2008, for failure to comply with various orders of the court, including failure to visit with B.W., failure to submit to a psychological evaluation, failure to pay child support, failure to maintain stable housing and employment, failure to attend counseling, and failure to complete parenting classes. Welch was sentenced to serve thirty days in the county jail; however, the court suspended the sentence for six months on the condition that Welch follow all court orders.

After two permanency-planning hearings where the court found that Welch had complied with all of the court's orders and the case plan, the court authorized a trial placement of B.W. with Welch.[3] The court also ruled that, if the trial placement was successful, custody of B.W. would be returned to Welch on November 7, 2009.

The court held an emergency hearing on November 4, 2009, at which time B.W. was placed back into DHS's care. The court found that Welch was unstable in her housing, her employment, and her relationship with Chad Hunt because she had lied to DHS about these matters. The court also found that Welch had not successfully completed the drug court and was an unfit mother. The court concluded that the trial placement had failed. Visits were to be supervised. The court also issued a show-cause order to determine whether Welch was in contempt of court.

At the December 18, 2009 permanency-planning hearing, the court found that Welch was no longer making significant, measurable progress or diligently working toward reunification, and it accordingly changed the goal of the case to adoption. The court found that Welch had not complied with any of the court's orders or the case plan. The court specifically found that Welch was unfit and that the trial placement was unsuccessful. The court found that Welch admitted to using drugs during the trial placement. The court terminated the visitation between Welch and B.W. The court further found Welch in contempt of court and sentenced her to sixty days in the county jail to be served immediately.

DHS filed a petition for termination of parental rights on December 31, 2009. The petition asserted three grounds for termination, including the "twelve-month failure to remedy" ground, see Ark.Code Ann. § 9–27–341(b)(3)(B)(i) *(a)* (Repl. 2009); the "twelve-month willful failure to provide support or maintain meaningful contact" ground, see Ark.Code Ann. § 9–27–341(b)(3)(B)(ii) *(a);* and the "other subsequent factors" ground, see Ark.Code Ann. § 9–27–341(b)(3)(B)(vii) *(a).*

The case proceeded to a termination hearing on March 19, 2010. Tara Marcom, the DHS case worker, testified that B.W. was thriving in her current placement. Other than a one-week trial placement, B.W. had been with the same foster parents since she was removed from Welch's custody in February 2008. Marcom had not had any contact from Welch after she was incarcerated following the December 2009 hearing. She said that Welch had entered a treatment program prior to that hearing, but was unable to complete the program because of her incarceration. Welch returned to the program following her release. According to Marcom, Welch

---

**3.** The permanency-planning hearings were held on April 29, 2009, and October 7, 2009.

was continued at his request, and his rights are not an issue in this appeal.

was making progress up to the point of the trial placement when everything fell apart and was now attempting to remedy her problems by seeking treatment. However, Marcom would not say that Welch had cooperated with DHS and said that Welch had not shown that she could care for B.W., had stable housing and employment, or had overcome her addiction problem. She also said that Welch had not paid child support or provided clothes or gifts to B.W. since the December hearing. She recounted the services DHS provided Welch. Marcom opined that B.W. was adoptable, suggesting that B.W.'s current placement could be considered long term.

On cross-examination, Marcom said that it appeared that Welch and B.W. had a good bond and that Welch appeared to be a good mother. According to Marcom, Welch lied to her and the department about where she was living, with whom she was involved, and whether she was using drugs. She said that Welch used drugs the night she graduated from the drug court program.

Dalesha Welch testified that she was currently residing in a treatment program following her release from jail on the sixty-day contempt sentence. She had been in the treatment program for approximately one week before she was incarcerated. She was also incarcerated for over two weeks prior to entering the treatment program the first time. According to Welch, the treatment program was to last six weeks and end on April 8, 2010. She acknowledged that she would have to restart the drug court program. She said that she was drug tested weekly, which she was passing. Welch said that she was not employed while incarcerated, but was employed prior to that time. She lacked her own transportation. She also admitted that her last visit with B.W. occurred in November 2009. She asked the court not to terminate her parental rights and to consider placing B.W. with her at the treatment facility. She was behind on her child-support payments, but intended to bring them current once she completed treatment.

The court ruled from the bench and granted the petition for termination. The court extensively recounted the history of the case before finding that termination was in B.W.'s best interest and that DHS had proven its allegations with respect to two grounds alleged in its petition. The court entered its order terminating Welch's parental rights on April 7, 2010. Welch timely filed her notice of appeal.

We review cases involving the termination of parental rights de novo. *Grant v. Arkansas Dep't of Human Servs.*, 2010 Ark. App. 636, 378 S.W.3d 227. The grounds for termination must be proven by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A heavy burden is placed on the party seeking the termination of parental rights because it is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to pro-

vide reasonable care for their minor children. *Id.*

■ The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *J.T. v. Arkansas Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). The first step requires proof of one or more of the statutory grounds for termination. Ark.Code Ann. § 9–27–341(b)(3)(B). Welch does not challenge the circuit court's findings that DHS proved grounds for termination, and we, therefore, do not address them.

■■ The second step requires consideration of whether the termination of parental rights is in B.W.'s best interest. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl. 2009). This includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. Instead, after *considering* all of the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *McFarland v. Arkansas Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005); *see also Carroll v. Arkansas Dep't of Human Servs.*, 85 Ark.App. 255, 148 S.W.3d 780 (2004).

Welch first asserts that *Haynes v. Arkansas Department of Human Services*, 2010 Ark. App. 28, 2010 WL 135194, requires some basis for the caseworker's testimony that she believed that B.W. was adoptable. However, *Haynes* is distinguishable from the present case in that there was absolutely no testimony in *Haynes* from which the court could consider the child's adoptability. In the present case, the caseworker opined her belief that

B.W. was adoptable. She also inferred that the foster parents wanted to adopt B.W. Based on this testimony and the circuit court's specific finding that B.W. was adoptable, the court complied with the statute by *considering* whether B.W. was adoptable as part of the larger, best-interest analysis. *McFarland, supra; Carroll, supra.*

■ This brings us to the second part of the analysis, the harm prong. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Arkansas Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008). The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722; *Lee, supra.*

■ The evidence supports the court's finding of potential harm. The circuit court found that Welch had failed to maintain stable housing and was moving between friends and family. A stable home is one of a child's most basic needs, *Latham v. Arkansas Department of Health & Human Services*, 99 Ark.App. 25, 256 S.W.3d 543 (2007), and the failure to secure safe and appropriate housing of one's own is contrary to the child's well-being and best interest. *Carroll, supra.* Continuing drug use shows both an indifference to remedying the problems plaguing the family and potential harm to the children. *Id.* Welch is also having to repeat drug court and her treatment program anew. It is unclear how long it will take Welch to overcome her addiction problem or even if she will overcome it.

Welch's argument is essentially a plea for more time to improve her situation

because she had only recently reentered a treatment program. However, such a plea is inconsistent with the statutory mandate to provide permanency in a minor child's life in circumstances in which returning the child to the family home is contrary to the minor's health, safety, or welfare, and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the minor child's perspective. Ark.Code Ann. § 9–27–341(a)(3); *Carroll, supra.*

Affirmed.

PITTMAN and GLOVER, JJ., agree.