2011 Ark. App. 526

**Mary ANDERSON, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and B.A.1, B.A.2, M.A., and H.A., Minors, Appellees.**

**No. CA 11–183.**

Court of Appeals of Arkansas.

Sept. 14, 2011.

Janet Lawrence, Conway, for appellant.

Melissa Bristow Richardson, Jonesboro, Tabitha Baertels McNulty, Little Rock, for the appellees.

ROBIN F. WYNNE, Judge.

Mary Anderson appeals from an order of the Pulaski County Circuit Court terminating her parental rights to her children, B.A.1, born July 16, 1997; B.A.2, born November 30, 1998; M.A., born March 30, 2000; and H.A., born July 25, 2001.[1] We affirm.

The family moved to Arkansas from New Orleans in September 2005, after Hurricane Katrina, and DHS's history with the family began in November 2005. The children came into the care of DHS under a seventy-two-hour hold on March 26, 2008, because of inadequate supervision and environmental neglect, after appellant left them alone overnight in a home that did not have running water or gas and after appellant tested positive for cocaine and opiates. The court adjudicated the children dependent-neglected on June 2, 2008. In June and August 2008, Dr. Paul Deyoub gave appellant a psychological evaluation and determined that she is mildly mentally retarded, with an IQ of 69. On September 15, 2008, the court set the goal of reunification and ordered services. On March 9, 2009, the court changed the goal to termination and ordered DHS to provide intensive family services.

The court heard a termination hearing on May 27 and June 19, 2009. On July 2, 2009, it entered an order denying the petition for termination because DHS had failed to offer appellant such reunification services as in-home environmental, financial, and utility counseling and assistance; individual and family therapy; appropriate timing of, and communication about, random home visits; intensive family services; and appropriate counseling and therapy for B.H. and B.A.1. The court also directed DHS to assign a new family service worker to this case. DHS filed another petition

for termination on November 6, 2009. After the court held a second termination hearing on January 27, 2010, it found that, although appellant had substantially complied, DHS had failed to provide certain court-ordered services, such as individual therapy to the children and family therapy. In a permanency-planning order entered on April 28, 2010, the court found that DHS had made reasonable efforts to provide reunification services.

On July 12, 2010, DHS filed a third petition for termination, which it withdrew after a few weeks to give appellant more time for reunification. On August 9, 2010, the attorney ad litem filed a petition for termination, which DHS joined. The court held the third termination hearing on October 11 and November 19, 2010. The witnesses were: Terri Johnson, M.A. and B.A.1's foster mother; Megan Holt, who provided individual therapy to the children and family therapy; Martha Smith, who works for DHS's Division of Developmental Disability Services (DDS); Danyetta Pride, the family service worker for this case from April 2008 to July 2009; Treasure Golden, the family service worker from December 2009 until trial; Latrina Joyner, Ms. Golden's supervisor; Krystal Mullins, B.A.2's foster mother; Kasheena Walls, an adoption specialist; Dametra Mitchell, the CASA volunteer; and appellant.

On December 13, 2010, the court entered an order terminating appellant's parental rights, noting that DHS's failure to provide services was no longer an issue and stating that DHS had complied with its orders and had provided all possible services to appellant. The court found that appellant's failure to remedy the situation that caused removal, even though she had substantially complied, was the result

1. The father's parental rights have been terminated and 1 are not at issue in this appeal.

of her low IQ and ability to function, as reflected in her psychological evaluation by Dr. Deyoub. The court made the following findings regarding grounds for termination:

It now pains the Court to state that all services for reunification have been offered to Mother, without success, and that *no matter what amount of services that are offered to Mother, reunification will not be successful.* The Court finds that based upon the foregoing and the case history, that Mother lacks the capacity or ability to remedy the situation that caused removal of the Juveniles. Further, the Court believes that DHS Supervisor is correct when she testified that Mother would need constant assistance and redirection to care for the Juveniles. Mother lacks the ability to problem solve and provide for the Juveniles. In the Court's opinion, it is clear that under these circumstances that termination of Mother's rights is appropriate.

(E)The Department made reasonable efforts to provide services to the family and work toward the goal of reunification. Mother attempted to comply with services and the Case Plan. However, the causes of removal of the Juveniles have not been remedied by Mother. The Court acknowledges that Mother has a residence that is appropriate for the Juveniles according to her testimony, at the time of this hearing. Further, Mother is currently working again at the time of this hearing. However, since the last termination hearing in January 2010, there has been more instability in Mother's employment.... The Court applauds Mother for having employment for ⌊4the majority of this case, which does illustrate her attempts at compliance of the Case Plan. However, the Court is gravely concerned that there is no stability in Mother's employment and even though she currently has employment that would not result in her working all weekend and again leaving the Juveniles with inadequate supervision, there is a great likelihood that Mother will soon migrate to a different job and that job may result in a situation of inadequate supervision for the Juveniles. Mother appears to be unable to appreciate the seriousness and consequences of her work schedule and the effect that it would have on the Juveniles if they were even returned to her custody.

(F)The Court finds based upon the services offered and attempted compliance by Mother, Mother has shown the incapacity to remedy the subsequent factors and issues necessary to rehabilitate her circumstances that prevent the return of the Juveniles to the custody of Mother. ... This Court is left with the firm conviction because of clear and convincing evidence that Mother, even though she has complied with services is not capable of caring for the Juveniles as evidenced by the amount of time the Juveniles have been in DHS custody without any progress towards even unsupervised visitation.

The court addressed the children's best interests as follows:

7. That returning the Juveniles to the custody of Mother could harm the Juveniles' health and safety because Mother appears to be unable to appreciate the seriousness and repercussions of her actions as it relates to the needs and care of the Juveniles. For example, Therapist testified that Mother could not comprehend the effect that working a job in which her assigned shift was on the weekend would have on the Juveniles. Therapist testified, and based upon her testimony and the case history the Court finds, that Mother lacks the cognitive ability to meet the needs of the

Juveniles. The Juveniles potentially could be harmed by an unsuccessful reunification that would result in them being removed from Mother's home again and returning to DHS custody.

Further, this Court may also consider the harm the children suffer from lack of stability in a permanent home. *See Lee, supra.* All witnesses at this hearing offered testimony that Mother loved her children, and that the children loved their Mother. The Court recognizes that there is a strong bond with Mother and the Juveniles. However, Therapist testified that the Juveniles need permanency. In her opinion, the Juveniles need boundaries and waiting an additional two (2) to three (3) years for Mother to receive DDS would be damaging to the Juveniles, in particular [H.A.]. . . .

The best interests of these Juveniles to obtain permanency outweigh all other considerations. The Court has already denied termination of Mother's rights on two (2) previous Petitions filed by DHS because DHS had failed to offer all the appropriate services to Mother. However, in the approximate two and one-half (2 ½) years that these Juveniles have remained in DHS custody, Mother has not corrected or remedied her situation even though she attempted compliance of the Case Plan and services. At this time, visitation has not moved past supervised visitation at the DHS offices and reunification does not appear to be possible. It is undisputed that there is a bond between Mother and Juveniles, but the Court cannot justify allowing these Juveniles to wonder and worry about whether they can return home to Mother for another two (2) or three (3) years while Mother is on a waiting list for DDS. The court finds that this time frame of two (2) or three (3) more years before reunification may occur is not a reasonable period of time viewed from the Juveniles' perspective. See Ark. Code Ann. § 9–27–341(a)(3). Additionally, it is not a certainty that Mother would receive DDS and the Juveniles would be required to wait additional time for permanency to no avail. It is unconscionable to make these children wait any longer to have a boundary and permanency plan. . . . Therefore, the Court finds that the best interests of these Juveniles are to terminate Mother's rights and allow the Juveniles to move forward towards the permanent plan of adoption.

8. That Mother is not a fit and proper parent for the Juveniles. Specifically, Mother, even though she has attempted compliance with the Case Plan and services and has attempted to be the type of parent the Juveniles need, cannot be that parent. Mother lacks the ability and capacity to ensure the safety of the Juveniles. Mother fails to appreciate the ramifications of her actions and has made no progress in reunification even after intensive family services and having received all available services from DHS, except DDS.

. . . .

9. The Juveniles need permanency in their life and returning them to their Mother risks their overall safety, welfare, health and ability to have a stable living environment and permanent home. The Mother's ability to provide a stable home is too remote to risk the children's welfare, health, and safety and it would be contrary to their best interests as discussed hereinabove.

10. That the Department has an appropriate plan for permanent placement for the Juveniles. The appropriate plan is adoption. Adoption Specialist testified that she would attempt to find an adoptive placement for all four (4) Juve-

niles initially and that a sibling adoption would be preferable. However, if the siblings could not be adopted as a group, DHS would consider splitting the siblings. In her opinion, the Juveniles are adoptable, but it will be difficult to find an adoptive placement. She has been successful in the past with sibling group adoptions, but it requires special recruitments which would be undertaken in this matter. Foster Mother Mullins testified, if termination is granted, she and her husband have discussed [B.A.2] and have discussed it with [B.A.2].[6] Further, she testified that she did not know [B.A.2's] siblings, but that she would consider allowing them into her home for a determination about possible adoption. Foster Mother Johnson testified that in her experience [B.A.1] and [M.A.] could likely be adopted together, if the sibling group was split. Foster Mother Johnson stated that the girls would need an adoptive parent that was willing to work with them, but that she felt that adoption was likely. As to [H.A.], he is adoptable according to the Adoption Specialist, but she admitted that it would be very difficult to place him because of his behavioral issues.

The Court finds that adoption is likely to occur. The Court recognizes that it may be difficult, a fact acknowledged by the Adoption Specialist. However, both foster mothers offered testimony about their experience with adoptions in the foster care system and that in their opinion, adoption was likely for the respective children in their homes. Further, the Adoption Specialist stated that special recruitment would have to be done and that she had been successful in the past with sibling group placement. In fact, one foster parent testified that she would be open to meeting the siblings of [B.A.] concerning adoption.

11. That the Department has made reasonable efforts to provide appropriate family services to the Juvenile and family and to move forward to finalize the permanency plan of adoption.

12. That the Juveniles need a safe, permanent, loving home with a responsible, appropriate parent who can provide the Juveniles with the proper care, custody, and control to meet all of the Juveniles' needs.

Appellant filed a timely notice of appeal.

In her brief, appellant challenges the trial court's finding as to best interest and grounds. She points out that she complied with all requirements of the case plan, stressing that she obtained a stable home (for almost five months), as well as assistance from her church with food and utility bills. Appellant asks this court to reverse because DHS failed to assist her with applying for Developmental Disability Services when the case began. She argues that DHS did not make meaningful efforts to rehabilitate her and should have provided intensive family services with the children remaining in the home, and that her low IQ and poverty do not [7]render her unfit as a parent. She also contends that the likelihood that the children would be adopted was not proved and that their health and safety would not be at risk if returned to her.

We review cases involving the termination of parental rights de novo. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. The grounds for termination must be proven by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court

to judge the credibility of the witnesses. *Id.* The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *Id.* The first step requires proof of one or more of the statutory grounds for termination. Ark.Code Ann. § 9–27–341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the children's best interest. Ark.Code Ann. § 9–27–341(b)(3)(A). This includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. *Welch, supra.* Instead, after considering all of the factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Id.* Additionally, the circuit court is not required to affirmatively identify a potential harm or to find that actual harm would result if the child were returned to the parent; the potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. *Id.*

Arkansas Code Annotated section 9–27–341(b) (Repl.2009) provides in relevant part:

(3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

(A) That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and

(B) Of one (1) or more of the following grounds:

(i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

■ There is no dispute that appellant cooperated with DHS and substantially completed the case plan; unfortunately, she made very little progress. Ms. Holt testified that, in spite of the services offered appellant, she was still not capable of understanding why working on the weekends, when the children were not in school, was a problem. She stated that, when appellant lost her job during this proceeding, she did not apply for unemployment benefits because she thought it would take too long to fill out the paperwork; only with DHS's and Ms. Holt's insistence did she apply for SSI and unemployment benefits. Ms. Holt testified that she gave appellant the task of finding a babysitter for the children while she worked on the weekends; appellant, however, did not complete that task. Ms. Holt also said that, because of appellant's lack of cognitive ability, inability to reason, and low level of functioning, she was not capable of maintaining a household and providing the children with basic necessities.

■ Additionally, appellant cannot now argue that DHS was deficient in providing services, such as assisting her with applying for DDS services, when the case began. On April 28, 2010, in a permanency-planning order, the trial court

found that DHS had made reasonable efforts to provide services and achieve the goal of this case. Appellant did not appeal from that order. We will not address an argument that DHS failed to make meaningful efforts to reunify the family where the appellant did not appeal from an earlier permanency-planning order finding reasonable efforts. *Sparkman v. Ark. Dep't of Human Servs.*, 96 Ark.App. 363, 242 S.W.3d 282 (2006). It is true that, in its previous two orders denying petitions to terminate, the circuit court recognized DHS's earlier failure to provide reasonable efforts and directed it to do so "forthwith." At the final termination hearing, however, the evidence demonstrated that DHS had complied with the trial court's directive; in fact, appellant has pointed to no particular deficiency during the period of time between April 28, 2010, and the final termination hearing, when DHS provided intensive family services and attempted to assist her in obtaining SSI and DDS services. Unfortunately, the waiting list for DDS services was two to three years, and there was no guarantee that appellant would even qualify for such services. The witnesses demonstrated that DHS offered appellant assistance in every possible way; she simply failed to benefit from those services, while the children languished in foster care for over two and one-half years. There was no possible assistance that DHS could give appellant that could achieve reunification within a reasonable time, as viewed from the perspective of the children.

The goal of section 9–27–341 is to provide permanency in a child's life in circumstances in which returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 332, 255 S.W.3d 505, 507 (2007). The evidence clearly and convincingly demonstrated that, in spite of completing the case plan, appellant did not make sufficient progress in her attempts to remedy the situation that caused her children to be taken into custody—inadequate supervision and environmental neglect. Even after all of the services offered her, she did not comprehend the danger presented by leaving her children unsupervised. At the time of the last termination hearing, appellant was not capable of taking care of her children without constant and intensive assistance. A parent's rights may be terminated even when she has completed the case plan if she did not achieve the intended result of being capable of caring for her child. *Wright v. Ark. Dep't of Human Servs.*, 83 Ark.App. 1, 115 S.W.3d 332 (2003). When faced with a similar situation in *Meriweather*, 98 Ark.App. at 333, 255 S.W.3d at 508, we affirmed the trial court's decision to terminate the mother's parental rights, which was the only means by which to meet the child's need for permanency, explaining:

> We are duty-bound to support the trial court's action that gives effect to the legislature's overriding intent, which is to protect the best interest of our state's children in achieving a safe and permanent home. Ark.Code Ann. § 9–27–341(a)(3). While appellant attempted to be the parent that her child needed, she was not able to be that parent, at least not without a steady support system provided by DHHS.

The evidence that supported grounds for termination also supported the aspect of the best-interest analysis that is concerned with whether return of the children to appellant would subject them to poten-

tial harm. Further, the circuit court properly considered whether the children were adoptable, about which much testimony was taken. Ms. Walls testified that, although it would be difficult to find placements, the children were adoptable. She said that she would try to place all four siblings together, which she had been able to do with others in the past; if that did not work out, she would attempt to find them individual homes. She also believed that, even with his behavioral issues, H.A. was adoptable. Ms. Holt also testified that the children were adoptable and that it would not be detrimental if they were not adopted together; however, she thought it would be important for B.A.1 and M.A. to be adopted together because they had been in the same foster home for two years. Mrs. Mullins testified that she and her husband were willing to adopt B.A.2 and that she was also willing to meet with B.A.1 and M.A. to determine whether she would consider adopting them. Mrs. Johnson testified that she thought the girls were adoptable. The trial court heard and considered the evidence that the children were adoptable; in the termination order, it recognized the potential difficulty in placing the children but found that adoption was likely to occur. This was sufficient. The termination statute does not require a trial court to identify a particular potential adoptive home or find that a child will actually be adopted.

Affirmed.

MARTIN and HOOFMAN, JJ., agree.