

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-13-685

| | |
|---|---|
| REBEKAH SMITH and DAVID WISER<br>APPELLANTS | **Opinion Delivered** December 18, 2013 |
| V. | APPEAL FROM THE BENTON<br>COUNTY CIRCUIT COURT<br>[NO. J-2012-202-D/N] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILDREN<br>APPELLEES | HONORABLE THOMAS SMITH,<br>JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Appellants, Rebekah Smith and David Wiser, appeal from an order of the Benton County Circuit Court terminating their parental rights to their children: D.W., born July 17, 2007, and S.W., born September 18, 2008. On appeal, they argue that the circuit court erred in terminating their rights when (1) the Department of Human Services made no efforts to assist them in reunification, and there was a reasonable expectation that, with additional time, they could obtain stability and care for the children; and (2) there was no testimony at the termination hearing regarding the adoptability of the children. We hold that there was no error, and we affirm the circuit court's order terminating appellants' parental rights.

On March 20, 2012, the Department of Human Services (DHS) exercised an emergency hold over the children after appellants were arrested on drug charges, including manufacturing methamphetamine in the home where the children were living. The parents remained in jail or prison throughout this case: on October 1, 2012, Ms. Smith was

sentenced to 60 months in prison plus an additional 120 months suspended, and Mr. Wiser was sentenced to 48 months in prison plus an additional 60 months suspended. At the permanency planning hearing on January 29, 2013, the court changed the goal from reunification to adoption and ordered DHS to explore placement of the children with their maternal grandmother.

The court entered an order terminating appellants' parental rights on May 7, 2013, finding by clear and convincing evidence that termination of parental rights was in the best interest of the children, including consideration of the likelihood that the children would be adopted and the potential harm caused by returning the children to their parents' custody. The court specifically found by clear and convincing evidence that the children were adoptable and that DHS had identified a potential adoptive home for them. The court also specifically found that the parents had used methamphetamine throughout the lives of the children and had a long history of instability and drug use; that there was still a significant time in the lives of the children before their parents would be released from incarceration and thereafter have time to show stability and the ability to remain drug free; that the parents were in the beginning stages of the process of drug treatment and would require long-term treatment upon release from incarceration; that the children needed a permanent home to progress with their own mental-health treatment; that the parents had not seen the children since they were removed on March 20, 2012; and that the mother intended to relocate to California where the children were living when she was released from prison. The court also found the existence by clear and convincing evidence of two statutory grounds: (1) the

children had been out of the parents' custody for more than 12 months and, despite a meaningful effort by DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied by the parents; and (2) the parents were sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the children's lives. Ark. Code Ann. § 9–27–341(b)(3)(B)(i), (viii) (Supp. 2011).

We review cases involving the termination of parental rights de novo. *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, 378 S.W.3d 227. The grounds for termination must be proved by clear and convincing evidence. *Id*. When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, at 7, 378 S.W.3d 290, 294. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. A heavy burden is placed on the party seeking the termination of parental rights because it is an extreme remedy in derogation of the natural rights of the parents. *Id*. Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Welch*, 2010 Ark. App. 798, at 7–8, 378 S.W.3d at 294.

The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *J.T. v.*

SLIP OPINION

*Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the children's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). This includes consideration of the likelihood that they will be adopted and the potential harm caused by returning custody of them to the parent. The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. Instead, after considering all of the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005).

We turn first to appellants' argument that the circuit court erred in terminating their rights because DHS made no effort to assist them in reunification and there was a reasonable expectation that, given additional time, they could have obtained stability and the ability adequately to care for their children. This challenge applies to the ground that the children had been out of the parents' custody for more than 12 months and, despite a meaningful effort by DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied by the parents. Ark. Code Ann. § 9-27-341(b)(3)(B) (i). But the court in this case specifically found an alternative ground by clear and convincing evidence: that is, that appellants had been incarcerated since March 20, 2012, and had received sentences that would constitute a substantial period of the children's lives. Ark. Code Ann. § 9-27-341(b)(3)(B)(viii). Ms. Smith received a five-year sentence and Mr.

Wiser received a four-year sentence. This ground does not require DHS to provide "meaningful efforts" to rehabilitate the parents. Only one statutory ground is necessary to terminate parental rights. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 345, 285 S.W.3d 277, 282 (2008). We hold that there is clear and convincing evidence to support this alternative ground for termination, and therefore we hold that the trial court did not clearly err in terminating appellants' parental rights.

For their second point on appeal, appellants contend that the court erred in terminating their rights where there was no testimony presented from which the court could consider the children's adoptability. Arkansas Code Annotated section 9-27-341(b)(3)(A) requires the court, in determining whether termination is in the best interest of the children, to consider the likelihood that they will be adopted if the termination petition is granted. We have held that adoptability is but one factor that is considered when making a best-interest determination and that no factor must be established by clear and convincing evidence; rather, after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the children. *Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, at 6, 385 S.W.3d 285, 288.

While no one in this case testified that "the children are adoptable," we have no doubt that the court did what it was statutorily required to do—that is, consider the likelihood that the children would be adopted. At the time of the hearing, the children were living with their maternal grandmother in California, who already had custody of another child of Ms. Smith. Our de novo review of the evidence indicates that everyone at the

5

hearing was aware that the maternal grandmother was the potential adoptive parent. Sheila Beckton, a behavioral therapist and social worker who counseled the children, testified that it was very important for these children to develop a secure attachment to an adult and to know that the adult was not going to leave them. She was very concerned about the parents' ability to regain custody in a few years and the instability that would create. She testified that it would take "a while" for the children to build a strong attachment to their grandmother and that they needed to know that the placement with her was going to be permanent.

Mark Bright, the children's DHS foster-care worker, testified that the ultimate goal for the children was for "grandmother to adopt so she would have permanent custody of the kids." He testified that he believed adoption by the children's grandmother to be in their best interest because of his concern with appellants' history of drug use and the children's safety and stability. Finally, the following excerpt is from the testimony of Cassandra Middleton, the CASA worker assigned to the case:

> APPELLANTS' ATTORNEY: And you think that terminating their rights and having the grandmother adopt will prevent the parents from being in the children's lives?
>
> CASSANDRA: No, I don't think that—I don't see how that would keep the parents from being in the children's lives, if they're with her mother. Obviously, she's going to have contact with the mother.

She summed up her testimony by opining that adoption by the grandmother would be better than permanent custody because then the parents could not come back and remove custody from the grandmother.

The attorneys' arguments, while not evidence, also demonstrate that no one at the

hearing was confused about whether DHS thought the children were adoptable and that the grandmother had been chosen as an appropriate adoptive placement. The attorney ad litem answered the court's question regarding whether she was sure that the grandmother was prepared to adopt these children, stating that she was. The ad litem attorney said that she had spoken with the grandmother and that the grandmother had said that she would do whatever was necessary to protect the children. Finally, appellants' attorney acknowledged that DHS had stated "that the children [were] both adoptable." These statements and arguments of counsel demonstrate that the issue of adoptability was before the court.

Most importantly, the court made a specific finding that the children were adoptable. It then found, "While the parents may in future years end up having contact with the juveniles, the children need to know that the home they are currently in will be their permanent home and that they won't be removed or taken out of that home."

Although the better practice may be for DHS to introduce testimony that the children are adoptable and that DHS has a potential adoptive placement, the statute does not require any "magic words" but merely provides that the court consider the likelihood that the children will be adopted in making its best-interest determination. Adoptability is not an essential element of proof, *McDaniel v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 263, and reversing on this point in this case would be the epitome of placing form over substance. Our review of the testimony, arguments, and findings convince us that DHS, the CASA worker, the children's therapist, and the court believed that these children were adoptable and that the grandmother had stated that she intended to adopt them. To reverse for failure of the

7

circuit court to consider a factor when it is apparent that the court considered it would subvert one of the primary purposes of termination: "to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective." Ark. Code Ann. § 9-27-341(a)(3); *see also Fredrick v. Ark. Dep't Human Servs.*, 2009 Ark. App. 652. Because the record demonstrates that the court considered the likelihood of adoption as part of its best–interest analysis, we reject appellants' argument.

For the foregoing reasons, we affirm the circuit court's order terminating appellants' parental rights.

Affirmed.

HARRISON and WOOD, JJ., agree.

*Deborah R. Sallings*, Arkansas Public Defender Commission, for appellants.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor child.