Cite as 2019 Ark. App. 477

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-19-477

| | |
|---|---|
| | **Opinion Delivered:** October 23, 2019 |
| RUSSELL FRONTERHOUSE | |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-17-520] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE LEIGH ZUERKER, JUDGE |
| APPELLEES | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Russell Fronterhouse appeals from the March 15, 2019 order terminating his and Katrina Fronterhouse's parental rights to their four minor children, M.H., Z.F., P.F., and R.F. Katrina is not a party to this appeal. Russell challenges only the circuit court's best-interest finding, acknowledging there was sufficient evidence to support the statutory grounds for termination. Specifically, he contends "it was error for the trial court to find that termination was in the best interest of his children because the trial court failed to give preferential consideration to placing the children with their paternal grandmother, who had an approved ICPC [Interstate Compact on the Placement of Children] home study." We affirm.

This matter began as a Family In Need of Services (FINS) case. It progressed to a dependency-neglect case when Katrina had an automobile a collision while the children

were in the vehicle, and she tested positive for methamphetamine. Efforts to test Russell for drugs were unsuccessful. The children were placed in DHS custody in December 2017 and adjudicated dependent-neglected on January 24, 2018. The original goal of the case was reunification. As the case progressed, however, Katrina continued to have drug issues and Russell was incarcerated.[1]

On January 30, 2019, the circuit court entered a permanency-planning order that changed the goal of the case to adoption following termination. The order explained that the underlying hearing had started December 13, 2018, and was continued to January 24, 2019; that DHS had received the approved ICPC home study for the paternal grandparents[2] the week of the December 13 hearing; that a visit with the grandparents was arranged prior to the January 24 portion of the hearing; and that "[t]he permanency planning hearing was completed on January 24, 2019 to address the issue of placement with family in Missouri." The order further provided that "mindful of the available permanency planning dispositions and in accordance with the best interest, health and safety of the juveniles, [the court] does hereby determine the goal of the case shall be adoption following termination."

When the termination hearing began on February 14, 2019, the children had been out of the parents' custody since December 2017. The plan for adoption was to keep all four children together. They had never lived with the paternal grandparents, and there was no evidence of a strong relationship with them. Shortly after the termination hearing had

---

[1]He was sentenced to 4 years in prison for multiple felony offenses on April 18, 2018, and remained in prison at the time of the termination hearing on February 14, 2019.

[2]The paternal grandparents lived in Missouri. It is undisputed that their first ICPC home study was denied.

begun, the circuit court recognized Deeanna Weimar, an attorney representing the paternal grandmother.  The following colloquy occurred:

| | |
|---|---|
| [WEIMAR]: | I'm not a party to this matter at this point but the paternal grandmother contacted me this morning and she has requested I do an oral Motion to Intervene.  I don't know if the Court is going to consider it, based on basically an approved ICPC Home Study that the Department denied without having a proper hearing as it required in the PPH Hearing, and so I was going to request on her behalf that – |
| THE COURT: | I don't think the Department denied the ICPC.  I don't think that's what – |
| [WEIMAR]: | Well, the Department didn't place, and there was an approved ICPC and there was no placement with my client. |
| THE COURT: | The Court didn't place. |
| [WEIMAR]: | Okay. |
| THE COURT: | There is no motion – as far as I'm concerned there is no motion pending before that [sic] Court at this time.  I'm not going to – |
| [WEIMAR]: | So you are not going to accept an oral motion? |
| THE COURT: | No, ma'am.  Even if I did it gives nobody an opportunity to respond. |
| [WEIMAR]: | I understand, I just have to do what she's asked. |
| THE COURT: | I understand. |

The circuit court refused to entertain the oral motion to intervene.  Russell did not object when it was denied and did not present his mother as a witness.  Although Russell noted at the termination hearing his desire that the children be placed with the paternal grandmother, he did not present evidence to support that option.  The approved home study was before the circuit court in the permanency-planning hearing, but it was not introduced in the

3

termination hearing and is not part of the record before us. In closing arguments, Russell's counsel mentioned the approved home study and expressed Russell's desire that the children be placed with his mother, but no best-interest argument was specifically developed.

On March 15, 2019, the circuit court entered the order terminating Russell's parental rights. On March 29, 2019, Russell filed his notice of appeal designating only "the order of the Circuit Court entered on March 15, 2019 with reference to a hearing regarding: . . . termination of parental rights." Although the notice-of-appeal form provided several other boxes that could have been marked to reference additional hearings, Russell checked only the box for the hearing regarding "termination of parental rights." In addition, under the "Designation of Record" portion of the notice of appeal, Russell listed the orders that had been entered in the case, including the January 30 permanency-planning order, but the only transcript that he ordered was from the February 14 termination hearing. He did not designate the permanency-planning hearing transcript as part of the record. Consequently, our analysis is limited to review of the termination order.

We review cases involving the termination of parental rights de novo. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A heavy burden is placed on the party

4

seeking the termination of parental rights because it is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *Id.* The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *Id.*

Consideration of whether termination is in the child's best interest includes determining the likelihood the child will be adopted and the potential harm caused by returning custody of the child to the parent. *Id.* The circuit court does not have to determine that every factor considered be established by clear and convincing evidence. *Id.* Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *Id.*

In this appeal, Russell does not challenge the circuit court's findings that DHS proved statutory grounds for termination. He challenges only the circuit court's best-interest finding, and in doing so he does not challenge the adoptability or potential–harm factors. Instead, he focuses his best-interest challenge solely on the circuit court's failure to place the children with their paternal grandmother at the termination hearing. He notes that his mother sought to intervene in the case at the start of the termination hearing, but the circuit court refused to consider her oral motion. He argues that despite not allowing her to intervene, the circuit court should have taken into consideration whether placement with

the grandmother was in the children's best interest, and it clearly erred in concluding that termination was in the children's best interest. We disagree.

At the termination hearing, Russell expressed his desire that the children be placed with his mother, but she did not testify. The approved home study was not introduced in the termination hearing and is not part of the record before us. There was no evidence presented of a relationship between the children and their paternal grandmother, and the children had remained in DHS custody throughout the case. In closing arguments, Russell's counsel mentioned the approved home study and reiterated Russell's desire that the children be placed with his mother, but no best-interest argument was specifically developed. We hold there was no clear error in the circuit court's conclusion that it was in the children's best interest to terminate Russell's parental rights and instruct DHS to proceed with the permanency plan of adoption.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.