Cite as 2023 Ark. App. 44

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-271

| | | |
|---|---|---|
| RAPHAELL WOODS | | Opinion Delivered February 8, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46JV-20-118] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE BRENT HALTOM, JUDGE |
| | APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## ROBERT J. GLADWIN, Judge

Counsel for Raphaell Woods brings this no-merit appeal from the Miller County Circuit Court 's order entered on January 31, 2022, terminating Woods's parental rights to his three minor children. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), his counsel has filed a no-merit brief setting forth all adverse rulings from the termination hearing and asserting that there are no issues that would support a meritorious appeal. Counsel has also filed a motion asking to be relieved. The clerk of this court sent a copy of the brief and motion to be relieved to Woods, informing him that he has the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(i)(3). Woods has not filed any pro se

points. We grant counsel's motion to withdraw and affirm the order terminating Woods's parental rights.

On September 25, 2020, the Arkansas Department of Human Services ("DHS") received allegations that the three children who are the subject of this action were dependent-neglected because their father, Woods, was arrested for loitering and had tested positive for methamphetamine. Woods had to be taken to the hospital, and the children were left in the care of relatives. He and the children had reportedly been living in his vehicle. DHS exercised a seventy-two-hour hold on the children for lack of a legal caretaker because their legal caretaker has a substance-abuse issue. DHS filed its petition for dependency-neglect on September 28. The circuit court entered its ex parte order for emergency custody the following day, setting a probable-cause hearing for September 30.

As of the September 30 probable-cause hearing, DHS had not yet perfected service on either parent. But the mother, Jonie Woods, who was excused from the hearing because she had been diagnosed with COVID-19, stipulated to an adjudication and finding of dependency-neglect at the probable-cause hearing. Woods was not present at the probable-cause hearing. A review hearing was set for December 9. Because the whereabouts of the parents were unknown, DHS perfected service on both parents by warning order as evidenced by the affidavit of service that was filed on February 11, 2021.

The circuit court held a review hearing on December 9, after which it found that Woods had not complied with the case plan or orders of the court. DHS had not had any contact with Woods since the beginning of the case, and his whereabouts were unknown.

DHS indicated that it intended to file a motion to terminate reunification services. In anticipation of DHS's motion, the circuit court set a hearing for February 10, 2021.

DHS filed its motion to terminate reunification services on February 2. Because of the close proximity between DHS's filing of its motion to terminate reunification services and the hearing date of February 10, DHS moved to continue the hearing to provide an opportunity for DHS to achieve service on Woods. The circuit court granted that motion on February 3 and continued the hearing until April 21.

A permanency-planning hearing was held on June 23. Woods was not present, and the goal of the case was changed from reunification to adoption with DHS filing a petition to terminate parental rights. The circuit court did find that reunification services were to continue for Woods but not Jonie.[1] The circuit court found that Woods had not complied with the case plan and orders of the court in that he indicated he was going to participate but was not actively working services. The circuit court set a hearing on DHS's motion to terminate reunification services as to Woods for July 7.

Woods appeared at the July 7 hearing, after which the circuit court found that Woods had made no forward progress since the inception of the case and relieved DHS from having to offer any further reunification services to him pursuant to an order entered on August 27. Also at the hearing, a permanency-planning hearing was set for August 4, and again, Woods

---

[1]Although there is no order resulting for the hearing that occurred on April 21, 2021, it appears that the circuit court granted DHS's motion to terminate reunification services as to Jonie at that hearing.

was not present. The circuit court found that Woods had not complied with the case plan or orders of the court, finding again that he indicated he was going to participate in services but was not actively working any of them as of that permanency-planning hearing. A termination hearing was set for November 3. Because DHS had not yet obtained service on Jonie as to the termination petition, DHS moved to continue the November 3 termination hearing, which the circuit court granted, resetting the termination hearing for December 15. DHS again moved to continue the termination hearing for lack of service on Jonie, and the circuit court reset the termination hearing to January 19, 2022.

DHS filed its petition for termination of parental rights on August 24. The termination petition alleged that parental rights should be terminated because the parents had abandoned the children pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(iv) (Supp. 2021); that the parents had manifested an incapacity or indifference to remedy subsequent factors that arose since the inception of the case pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*; and that the parents had subjected the children to aggravated circumstances with little likelihood of successful reunification despite services pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. A hearing on DHS's petition was set for November 3.

The circuit court eventually held the termination hearing on January 19. Neither parent was present. The only two witnesses that DHS called were DHS's Miller County supervisor, Alexis Lampkins, and DHS's adoption specialist, Lisa Forte.

4

Lampkins testified that Woods was ordered to follow the services that were outlined in the case plan, which included a psychological evaluation, a drug-and-alcohol assessment, obtaining and maintaining employment and stable housing, parenting classes, and individual counseling. Although Woods submitted to his psychological evaluation on March 8, he never submitted to the drug-and-alcohol assessment, despite three separate appointments that were scheduled for him to do so. Woods was offered transportation for each of the three appointments for the drug-and-alcohol assessment. Woods never started any parenting classes. Woods also had not participated in NA/AA classes, as evidenced by his lack of providing sign-in sheets verifying his attendance thereof.

DHS was able to attempt only a single home visit with Woods on May 6. Testimony indicated that it took him seven minutes to open the door, at which time Woods was shaking, appeared to be under the influence of illegal substances, and took several minutes just to put on his shoes. Prior to that housing, Woods had been homeless. Woods was not employed, and he told DHS that he was simply doing odd jobs. DHS attempted to have Woods drug screened on two occasions, but Woods refused to submit on both occasions.

As of the termination hearing, Woods had not visited with the children since March 2021, and he had not requested visitation with the children despite the fact that the children were placed with his sister. He also had not had any phone contact with the children, the last of which occurred in May 2021.

Also as of the termination hearing, Woods was living in Houston, Texas. DHS did not have any contact information for Woods; the phone number that Woods had been using

5

to text Lampkins was no longer in service. Woods did not start and had not completed individual counseling. DHS believed that Woods was participating in some sort of substance-abuse treatment associated with his criminal case in Texas. Over the course of the case, Woods had not provided anything for the children by way of diapers, formula, clothing, toys, or child support.

Lampkins testified that she believed termination was in the best interest of the children. The children had been in foster care for well over a year, and they were all placed together and doing well in that placement with their paternal aunt. Lampkins testified that it would be harmful to return the children to Woods because he had not remedied the issues that caused the case to open. She noted that DHS had given Woods additional time to complete services rather than terminating reunification services as it did with Jonie at the hearing on April 21, 2021. Since that hearing, Woods still failed to complete any services, and reunification services were discontinued pursuant to an order entered on August 27. Lampkins testified that Woods had abandoned his kids, and no one had provided her any contact information for Woods.

Adoption specialist Lisa Forte testified next. The potential for adoption of these children is high. There were no known existing factors that would prohibit adoption. She ran a data match for the children, and there were fifty homes that matched. The paternal aunt, their current placement, wished to adopt the children.

At the conclusion of the hearing, the circuit court terminated Woods's parental rights on all three grounds that DHS pled. The circuit court's order was entered on January 31, 2022, and Woods timely filed his notice of appeal on February 22.

We recently reiterated the framework for termination-of-parental-rights cases in *Edd v. Arkansas Department of Human Services*, 2023 Ark. App. 10, at 2:

> We review termination-of-parental-rights cases de novo. *Hune v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 543. At least one statutory ground must exist, in addition to a finding that it is in the children's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341 (Supp. 2021); *Kohlman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595. A best-interest finding under the Arkansas Juvenile Code must include consideration of two factors: the likelihood of adoption and potential harm. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). However, adoptability is not an essential element of proof. *McDaniel v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 263. The statute does not require any "magic words" or a specific quantum of evidence regarding a child's adoptability but simply requires that the circuit court consider the likelihood that the child will be adopted in making its best-interest determination. *Smith v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 753, at 7, 431 S.W.3d 364, 368–69. Potential harm must be viewed in a forward-looking manner and in broad terms. *Riggs v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 185, at 6, 575 S.W.3d 129, 132.

*Linker-Flores* requires that counsel list all objections decided adversely to an appellant and a discussion of why those adverse rulings do not constitute nonfrivolous grounds for appeal. In accordance with Ark. Sup. Ct. R. 6-9(i)(1)(A), Woods's appellate counsel has reviewed the record for all adverse rulings to Woods made by the circuit court on all objections, motions, and requests made by Woods at the termination hearing from which the appeal arose. He is correct that, other than the termination order itself, there were no objections on which the court ruled adversely to Woods.

Regarding the statutory-grounds element, counsel submits that any challenge to the circuit court's determination that statutory grounds existed under Ark. Code Ann. § 9-27-341(b)(3)(B) for termination of Woods's parental rights has the least potential for arguable merit in this appeal. Woods had neither requested visitation nor visited with his children since March 2021, and it had been since May 2021 since he last had telephone contact with them. Accordingly, the circuit court had sufficient evidence on which to make a determination that Woods had abandoned the children. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(iv). Because only one ground is needed for termination, any argument regarding the remaining grounds is moot. *See Draper v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58.

Counsel also argues it would be frivolous to seek reversal of the circuit court's best-interest findings. The Juvenile Code requires that a best-interest finding be based on the consideration of at least two factors: (1) the likelihood of adoptability—which is concerned with whether adoption is a viable permanency plan for the minor children; and (2) the potential harm caused by continuing contact with the parent. *See* Ark. Code Ann. § 9-27-341(b)(3)(A). Potential harm must be viewed in a forward-looking manner and considered in broad terms. *Edd*, 2023 Ark. App. 10, at 2. Each factor does not have to be proved by clear and convincing evidence; rather, it is the overall evidence that must demonstrate clearly and convincingly that termination is in the children's best interest. *Rogers v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 417, at 8, 654 S.W.3d 706, 711.

Here, DHS provided testimony of adoption specialist, Lisa Forte, that there was a high potential for these children to be adopted with no known factors that would prohibit adoption. Additionally, in performing a data match for the children, there were fifty homes that matched as potential adoptive placements. Last, the current placement, a paternal aunt, wanted to adopt the children. This court has held that such evidence was sufficient evidence to support this element of the best-interest analysis. *Rogers*, 2022 Ark. App. 417, at 9, 654 S.W.3d at 711. Accordingly, there is no meritorious challenge to this best-interest factor.

As to the "potential harm" factor, DHS presented the testimony of Miller County supervisor Alexis Lampkins regarding the potential harm should the children be returned to Woods—given that he had not remedied the reasons for removal. During the single attempted home visit DHS made to Woods's home, testimony indicated that it took Woods seven minutes to answer the door; several minutes to put on his shoes; and he was shaking and appeared under the influence. We hold that the evidence supports the circuit court's finding that the children would be at risk of harm if returned to Woods's custody.

The facts supporting potential harm in conjunction with the evidence of the children's adoptability provided sufficient evidence for the circuit court to find that termination of Woods's parental rights was in the children's best interest.

Having examined the record and the brief presented to us, we have determined that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination-of-parental-rights cases, and we hold that the appeal is wholly

without merit. Accordingly, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and BROWN, JJ., agree.

*James & Streit*, by: *Jonathan R. Streit*, for appellant.

One brief only.